JENNIE SLADKIN, APPELLANT, v. MAX RUBY,
RESPONDENT.

Submitted October 29, 1926—Decided January 31, 1927.

R., in part payment of the purchase price of a business, made and
   delivered to the H. C. Co., the seller, his promissory notes.
   Mrs. S. made a loan to the H. C. Co. for use in its business.
   This sum was obtained from a bank by Mrs. S. by pledge of
   collateral she owned. The H. C. Co. then delivered to Mrs. S.
   as collateral for her loan notes it owned, including three of the
   notes made by R. These notes were delivered to the bank and
   later, either by payment or reduction of the bank's loan, came
   into possession of Mrs. S. The notes were not paid at maturity
   by R. Mrs. S. instituted an action to recover the amount due
   thereon. R. filed an answer denying Mrs. S. was a *bona fide*
   holder in due course of said notes, and filed a counter-claim in
   which he set up that subsequent to the purchase of the business
   from the H. C. Co. (made by an agreement in writing) the H.
   C. Co. made an agreement with him that the amount of ac-
   counts found uncollectible was to be deducted from the face of
   the notes. A motion to direct a verdict for the plaintiff was
   made upon the grounds—(1) there was no evidence to show
   that Mrs. S. was not a *bona fide* holder of the notes, and (2)
   that the agreement set up in the counter-claim was void for
   lack of consideration. The motion was denied. Upon a review
   of the evidence—*Held*, (1) that Mrs. S. was a *bona fide* holder
   of the notes sued on; (2) that the agreement set up in the
   counter-claim was void for lack of consideration; (3) that there
   is no presumption in law that a husband is his wife's agent, and
   (4) that the trial judge erred in not directing a verdict for Mrs.
   S., the plaintiff.

On appeal from the Hudson County Circuit Court.

For the appellant, *Insley, Vreeland & Decker*.

For the respondent, *Joseph M. Alsofrom*.

The opinion of the court was delivered by

KATZENBACH, J. The Haverford Cycle Company, a Dela-
ware corporation, in the latter part of the year 1921, was
obliged to contract, for financial reasons, the volume of its

business.  It owned a number of branch stores.  One of its branches was located at No. 52 Newark avenue, in the city of Jersey City.  It decided to sell this branch.  On December 1st, 1921, it entered into a written agreement with Max Ruby (the respondent) for the sale of its Jersey City business.  The consideration to be paid by Ruby for the transfer to him of the merchandise, accounts receivable, furniture, fixtures, and good will of the business was $20,069.48.  The agreement provided that this sum was to be paid in two cash payments aggregating $5,000, and by the making and delivery by Ruby of a series of seventeen promissory notes in varying amounts to the order of the Haverford Cycle Company, payable at the National Security Bank of Philadelphia, on the due dates mentioned in the agreement and embodied in the notes.  These notes were duly executed by Ruby in accordance with the terms of said agreement and delivered to the Haverford Cycle Company.  In the present litigation we are only concerned with the history of three of the notes.  These are the note for $900, maturing on July 1st, 1923; the note for $969.48, maturing on August 1st, 1923, and the note for $900, maturing September 1st, 1923.

In June, 1922, the Haverford Cycle Company was indebted to the Firestone Tire and Rubber Company in the sum of $32,000.  The Firestone company was pressing for payment and threatening to place the cycle company in the hands of a receiver.  The Firestone company finally offered to accept $16,000 in full settlement of its account.  The cycle company was desirous of effecting a settlement on this basis.  It, however, had no funds.  Max M. Sladkin was the president of the cycle company.  His wife, Jennie Sladkin (the appellant herein), was the owner of a property in Atlantic City and also was the possessor of a mortgage covering property in Gloucester county, New Jersey.  Sladkin conceived the idea that this property could be utilized for the purpose of securing the $16,000 with which to effect for the cycle company the settlement with the Firestone company.  Sladkin, with the consent of his wife, approached the International Bank in Washington, D. C., for a loan of $16,000.  The bank agreed to loan Mrs. Sladkin $16,000 upon her note, in which

Mr. Sladkin was to join, secured by a mortgage to the bank on the Atlantic City property of Mrs. Sladkin and an assignment to the bank of the Gloucester county mortgage held by Mrs. Sladkin. On June 30th, 1922, Mr. and Mrs. Sladkin signed a note for $16,000, payable to the International Bank, and deposited the collateral mentioned. The note was on the usual collateral form and was payable on demand. It contained a waiver of demand, protest and notice of protest, which was signed by Mr. and Mrs. Sladkin. The bank gave Mrs. Sladkin a check for the proceeds of the note. She deposited the check in the Jenkintown Trust Company (a Pennsylvania bank located near Wyncote, Pennsylvania, the residence of the Sladkins). On July 5th, 1922, Mrs. Sladkin drew a check on the Jenkintown Trust Company to the order of the Firestone Tire and Rubber Company for $16,000. This check Mr. Sladkin used in the settlement of the cycle company's account with the Firestone company. After the settlement had been accomplished, Sladkin talked with the vice-president of the cycle company, John P. Suser, and asked for Mrs. Sladkin collateral from the cycle company to protect her for the advance made to the cycle company. It was agreed that Mrs. Sladkin should for her advance receive approximately $32,000 of the notes which the cycle company held as a result of the sale of branch stores. On July 31st, 1922, the said vice-president of the cycle company wrote a letter to Sladkin enclosing notes of those to whom the cycle company had sold its branches to the amount of $31,569.55. It was stated in the letter that these notes were collateral for the advance Mrs. Sladkin had made the company "In re Firestone Tire and Rubber Co." These notes were endorsed in blank "Haverford Cycle Co., I. C. Wilson, Treas." Among them were included the three notes of the respondent, Ruby, which have been particularly described. The notes enclosed in the letter of July 31st, 1922, were deposited with the International Bank after being endorsed by Mrs. Sladkin. Payments from time to time were made upon them by the makers. These payments aggregated $9,100. Ruby made payments upon his notes to the bank. Subsequently, the note of June 30th, 1922, held by the Inter-

national Bank, was paid or the bank released to Mrs. Sladkin the three Ruby notes which have been described. For the purposes of this case it makes no difference whether the note was paid or the notes held as collateral released. The inference from the production by Mrs. Sladkin of the original note of June 30th, 1922, at the trial, would be that the note had been paid by her. Ruby refused to pay the balance due on the notes when they matured. Mrs. Sladkin, the holder thereof, thereupon instituted in the Hudson County Circuit Court a suit against Ruby to recover the amount due on the three notes described. The defendant filed an answer in which he set up that the plaintiff was not a holder in due course of the notes. With the answer was filed a counter-claim which set up an alleged agreement between Ruby and the cycle company to the effect that the accounts transferred on December 1st, 1921, were warranted as good and collectible by the cycle company, and that if not paid within a reasonable time the amount of the accounts unpaid should be credited to Ruby. The accounts which he failed to collect, Ruby testified, amounted to $2,827.15. At the trial the plaintiff offered in evidence the three notes which the answer admitted the defendant had made. It was stipulated that $440 had been paid on the note due July 1st, 1923. The plaintiff then rested. The defendant called as witnesses the plaintiff, Mr. Sladkin, John A. Gerrow, Jr., the bookkeeper of the cycle company, and himself. The facts hereinbefore stated appeared from their examination. The only testimony on any feature of the case which has not been adverted to is perhaps the statement found in the testimony of Gerrow to the effect that on December 5th, 1922, which was about two days prior to the appointment of a receiver for the cycle company, the books of the cycle company showed that the notes in question had been transferred to the Washington bank. On December 5th, 1922, the witness made a record on the books of the cycle company to the effect that the notes were transferred from the bank to Mrs. Sladkin. This entry made at this time has no bearing upon the status of Mrs. Sladkin.

Upon the conclusion of the defendant's testimony, counsel for the plaintiff moved for a direction of a verdict in favor of the plaintiff upon the following grounds—(1) that there was no evidence in the case to the effect that Mrs. Sladkin was not the holder for value of the notes in suit, and (2) that there was no proof of any consideration for the agreement upon which the counter-claim was based. The trial court overruled this motion and permitted the case to go to the jury, leaving it to the jury to determine whether under the evidence the plaintiff was a holder for value of the notes in suit, and if not, whether the defendant had established the contract testified to with respect to the warranty of the accounts uncollected so as to be entitled to the deduction claimed by him. The jury, under these instructions, returned a verdict of $133.99 for the plaintiff. To have arrived at this result they must have found that Mrs. Sladkin was not a *bona fide* holder of the notes, that the agreement with reference to the warranty of the accounts testified to by Ruby was made, that the plaintiff was chargeable with notice thereof, and that certain accounts had not been collected.

From the judgment entered on this verdict the plaintiff has appealed. The appeal is based upon the exception taken to the refusal to direct a verdict for the plaintiff.

In refusing to direct a verdict for the plaintiff we think the trial judge erred. We have reached this result by two avenues. In the first place, it was incumbent upon the defendant to establish the agreement for the deduction of the uncollectible accounts from the amount due on the notes sued on, and also to show that Mrs. Sladkin had notice of the agreement at the time the notes were transferred to her. In the second place, it was necessary for the defendant to prove that the agreement was legal and bound the parties thereto. In both respects the defendant failed. The contract of December 1st, 1921, between the cycle company and Ruby was in writing. It did not provide for any deduction from the notes given by Ruby under its provisions if the accounts which had been transferred to him should be found uncollectible. The agreement to this effect, denied by Sladkin, but testified to by Ruby as having been made after December 1st, 1921, is

based on no consideration. There was nothing in the way of consideration moving to the cycle company to support the alleged agreement for deduction. It was error for the trial judge to have left the question of the consideration for the agreement to the jury. There was no evidence offered from which the jury could have found a consideration. The question of consideration was one of law and not of fact. The trial judge should have held the contract void for lack of consideration. There was also no evidence that at the time of the transfer of these notes to her Mrs. Sladkin had any knowledge of the so-called agreement for deduction. No attempt was made to show that she had actual knowledge. The contention is that Mr. Sladkin had knowledge of the agreement and that his knowledge should be imputed to Mrs. Sladkin. While the defendant made an effort to prove by Mr. Sladkin that Mr. Sladkin was his wife's agent in obtaining the loan for the cycle company, the effort failed as the testimony was insufficient to establish the relation of principal and agent. There is no presumption in the law that a husband is his wife's agent. *Sternberger* v. *Hurtzig*, 36 *N. J. Eq.* 375; *O'Carroll* v. *Stark*, 85 *N. J. L.* 438. On this ground also we think the submission of the case to the jury was erroneous.

The same result is reached by a second avenue. There was no evidence offered sufficient to overcome the presumption that Mrs. Sladkin was a holder in due course. The fifty-ninth section of the Negotiable Instruments act (3 *Comp. Stat., p.* 3741) provides that "every holder is deemed *prima facie* to be a holder in due course." The fifty-second section of the act (3 *Comp. Stat., p.* 3741) states that a holder in due course is a holder who has taken the instrument under these conditions—(a) that it is complete and regular on its face; (b) that he became the holder of it before it was overdue and without notice that it had been previously dishonored, if such was the fact; (c) that he took it in good faith and for value, and (d) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.

These requirements were all met in the present case. The notes were produced and received in evidence. They were

complete. They were regular on their face. Two of the notes were dated December 1st, 1921. The third was dated January 1st, 1922. They fell due on July 1st, 1923, August 1st, 1923, and September 1st, .1923. Mrs. Sladkin gave her collateral note to the International Bank on June 30th, 1922, and obtained from the bank $16,000. On July 5th, 1922, she paid this sum to the Firestone Tire and Rubber Company. Immediately thereafter the vice-president of the cycle company assented to the transfer of the notes in question and other similar notes to the amount of approximately $32,000 to Mrs. Sladkin as collateral. These notes passed from the control of the cycle company on July 31st, 1922. (The letter of July 31st, 1922, which has been referred to, is printed in the record. It seems not to have been admitted in evidence. It should have been. The matters, however, referred to in the letter were testified to by witnesses.) The notes were delivered to Mrs. Sladkin and pledged as additional collateral with the International Bank, as evidenced by the endorsement upon the notes and the testimony of Gerrow, the bookkeeper of the cycle company. In December, 1922, the entry was made in the cycle company's books that the notes had been transferred to Mrs. Sladkin. This was all long anterior to the due dates of the notes. There is no testimony which raises any question as to the good faith of Mrs. Sladkin. She gave value for the notes. The Negotiable Instruments act defines value as follows:

"Value is any consideration sufficient to support a simple contract; an antecedent or pre-existing debt constitutes value, and is deemed such whether the instrument is payable on demand or at a future time." 3 *Comp. Stat., p.* 3738.

The loan of $16,000 to the cycle company to be used in the settlement of the account against that company held by the Firestone Tire and Rubber Company was a consideration which supported the transfer of the notes. At the time of the transfer to Mrs. Sladkin she had no notice of any infirmity in the notes or defect in the title of the party negotiating the transfer, the cycle company. This question has already been considered. The alleged agreement with Ruby, made subsequent to the giving of his notes, that the un-

collectible accounts were to be deducted from the notes was void for lack of consideration. Moreover, the knowledge of Mr. Sladkin could not be imputed to Mrs. Sladkin in the absence of testimony that the relation of principal and agent existed betweeen them, had the agreement last mentioned been legal. There was, therefore, in our opinion, no evidence to overcome the presumption that Mrs. Sladkin was a holder in due course of the obligations sued on. There was also ample evidence to affirmatively show that Mrs. Sladkin was a *bona fide* holder for value of the notes. The trial court should have directed a verdict in favor of Mrs. Sladkin for the face of the notes, with interest, less the amount which it was stipulated that Ruby had paid on account of one of the notes. The judgment is reversed, with costs. The record is remitted to the Hudson County Circuit Court with instructions to enter a judgment in favor of the plaintiff, Mrs. Sladkin, against Max Ruby, the defendant, for the amount with interest due on the notes and costs.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Trenchard, Minturn, Kalisch, Black, Katzenbach, Campbell, Lloyd, Van Buskirk, McGlennon, Kays, Hetfield, JJ. 13.