JOHN RETZ, PLAINTIFF-APPELLANT, v. MAYOR AND COUNCIL OF THE TOWNSHIP OF SADDLE BROOK AND RUTH McGINNIS, TOWNSHIP CLERK, SADDLE BROOK, NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued December 1, 1975—Decided March 19, 1976.

564

*Dennis P. LaHiff* argued the cause for appellant (*Messineo & Messineo,* attoneys; *Mr. LaHiff,* on the brief).

*William D. Gorgone* argued the cause for respondents.

The opinion of the Court was delivered by

CLIFFORD, J. Plaintiff and others sought by means of a petition to protest a bond ordinance passed by defendant Council of the Township of Saddle Brook to fund a new municipal complex. The defendant Township Clerk issued a certificate holding the petition invalid, whereupon plaintiff filed a complaint in lieu of prerogative writ to compel a referendum on the ordinance and to enjoin its implementation until the voters of Saddle Brook could be heard on the issue. In dispute is the sufficiency of plaintiff's petition, which depends principally upon the determination of whether the signature of one spouse on a taxpayers' petition filed pursuant to the Home Rule Act, *N. J. S. A.* 40:49–27, may be considered to represent the full assessed value of property held by tenants by the entirety. Where one spouse signed plaintiff's petition and the tax rolls showed the property was held by tenancy by the entirety, the Township Clerk counted only one-half the assessed value of the property represented by that signature, thereby diminishing by $4,538,500 the total property value declared in the petition. The trial court upheld that method of valuation and the Appellate Division affirmed, 134 *N. J. Super.* 290 (1975). We granted plaintiff's petition for certification, 68 *N. J.* 491 (1975). Because the integrity of certain contracts is implicated by the decision in this case, thus making desirable early announcement of our

determination, we entered an Order of Reversal on January 12, 1976. We now set forth our reasons for that determination.

I

The bond ordinance in this case was intended to fund a new municipal building housing administrative offices and the police department, and other improvements including an addition to the fire house and street widening. Plaintiff operates a bakery located across the street from the site of the proposed municipal complex. The bakery is owned by C. S. R. Realty, a corporation of which plaintiff is an officer, director, and majority shareholder.

On September 17, 1974 the Township Council adopted the bond ordinance, a copy of which was published in a local newspaper on September 19. On September 27 a petition protesting the adoption of the ordinance and bearing approximately 989 signatures was filed with the Township Clerk. She filed a certificate on October 10, 1974, declaring the petition invalid. That same day the Township awarded contracts to low bidders for three phases of the ordinance.

The petition, which plaintiff initiated and prepared but did not sign, expressed only the signers' protest. It was silent concerning a referendum and did not purport to comply with or enforce operation of any statute. The Legislature has provided two mechanisms for halting the implementation of an ordinance passed by a municipal council: the referendum provision, *N. J. S. A.* 40:69A–185, contained in the Optional Municipal Charters Law, more commonly known as the Faulkner Act, *N. J. S. A.* 40:69A–1 *et seq.;* and an analogous provision in the Home Rule Act, *N. J. S. A.* 40:49–27.

*N. J. S. A.* 40:69A–185 provides in pertinent part that "any ordinance passed by the council" of a Faulkner Act municipality may be submitted by referendum to the voters as long as 25% of the registered voters in a municipality

of under 70,000 inhabitants file with the municipal clerk a petition protesting the adoption of the ordinance within 20 days after its final passage and approval. Saddle Brook is a Faulkner Act municipality, having functioned as a Mayor-Council Plan B as provided by the Act since July 1, 1969.

Contrasted with this general provision is the Home Rule Act's specified treatment of the subject before us. *N. J. S. A.* 40:49–27 reads in part as follows:

> Any ordinance authorizing the incurring of any indebtedness, except for current expenses shall become operative ten days after the publication thereof after its final passage, unless within said ten days a protest against the incurring of such indebtedness shall be filed in the office of the municipal clerk signed by taxpayers representing ten per cent in amount of the assessed valuation of such municipality, whose names appear on the last preceding assessment roll thereof, in which case such ordinance shall remain inoperative until a proposition for the ratification thereof shall be adopted, at an election to be held for that purpose, by a majority of the qualified voters of the municipality voting on the proposition * * *.
>
> The certificate of the clerk of the municipality filed in his office as to the filing or sufficiency of any protest shall be conclusive for the purposes of this section.[1]
>
> *　　* 　　*　　*　　*　　*　　*　　*

Both of these referendum provisions can be said to contemplate the municipal activity undertaken by the Township of Saddle Brook. However, plaintiff concedes that the petition he submitted does not begin to satisfy the requirements of the Faulkner Act. We look, then, to the Home Rule Act, whose more restrictive language is particularly suited to the bond ordinance being protested;[2] and specifi-

---

[1]We do not consider this paragraph to preclude our review here, because the errors complained of do not go to tabulation or factual judgments but to errors of law. *Cf. Baldwin Construction Co. v. Essex County Bd. of Taxation,* 16 *N. J.* 329, 345 (1954).

[2]We reject defendants' contention that *N. J. S. A.* 40A:2–18 applies to this bond ordinance so as to prevent a referendum. That

cally we must determine whether plaintiff has gathered the requisite representation of 10% of the assessed valuation of the Township to render the ordinance presently inoperative and to compel a referendum.

On the trial level, the amount plaintiff alleged was represented by the signatures he had gathered was some $11,000,000 more than the sum certified to by the Township Clerk. From the record on which summary judgment was granted to defendants this discrepancy was left unexplained; therefore, after the first oral argument of plaintiff's appeal to the Appellate Division, that court remanded for the limited purpose of determining whether in fact the petition represented 10% of the assessed value of property in the Township. 134 *N. J. Super.* at 294. On the remand certain findings of fact were made and submitted to the Appellate Division. The total assessed ratables in Saddle Brook as of October, 1974 amounted to $158,887,355. On this basis the trial court found that the petition needed to represent $15,888,735.50 of assessed valuation to satisfy the statute, whereas the petition as filed represented an assessed value of $11,298,355. During the hearings conducted by the trial court certain concessions were made about the validity of some of the signatures which prompted the court to adjust the valuation represented by the petition to a lower figure, resulting in a finding that the petition fell short of the

provision states that "[a] bond ordinance which authorizes obligations to fund * * * obligations * * * or notes or bonds issued or authorized pursuant [to the Local Bond Law, *N. J. S. A.* 40A:2–1 *et seq.*] shall not be subject to a referendum." "Obligations" are defined in the Local Bond Law as "bonds or notes of a local unit," *N. J. S. A.* 40A:2–2 (b). The bond ordinance in this case was passed not to fund existing bonds or notes but to appropriate funds for a municipal complex. Such an undertaking is suitable for a public vote, whereas the bond ordinance contemplated by *N. J. S. A.* 40A:2–19, which seeks to wipe out an indebtedness, is better passed in an expeditious manner. See also *N. J. S. A.* 40A:2–4: "The power and obligation of a local unit to pay any and all notes issued by it * * * shall be unlimited * * *."

10% minimum by $4,816.855.50. These figures were adopted by the Appellate Division, and we accept them as well.

Plaintiff argues that had the Township Clerk not made certain judgments concerning the valuation to be given some of the signatures, the assessed value they represent would total $19,759,960, well in excess of the necessary amount. At oral argument counsel for both sides conceded that if this Court determines that the signature of one spouse on the petition represents the full amount of assessed value of property held by the entirety (which alone would add $4,538,500 to the petition), and if the corporate signatures on the petition bind the corporations they represent without the support of a resolution or some other indication that the party signing had the requisite authority to sign, then the necessary quantum of property value is indeed represented and a referendum is in order.

## II

The courts below upheld the Township Clerk's decision to allow only one-half the full value of property owned by tenancy by the entirety where one spouse had signed the petition. The Appellate Division relied on agency principles, noting that there is no presumption inherent in the marriage that either spouse may act for the other, *e. g., Sladkin v. Ruby,* 103 *N. J. L.* 449, 454 (E. & A. 1927); *Grieco v. Grieco,* 38 *N. J. Super.* 593 (App. Div. 1956). As a result that court concluded neither spouse could represent the entire ownership interest on the petition. Additionally, it rejected the "archaic fiction" of spousal unity, which has been viewed with disfavor in our State. See *King v. Greene,* 30 *N. J.* 395, 413 (1959) (Weintraub, C. J., dissenting); *Ft. Lee Savings & Loan Ass'n v. LiButti,* 106 *N. J. Super.* 211, 216 (App. Div. 1969) (Carton, J., dissenting), *rev'd on dissent below* 55 *N. J.* 532 (1970).

We recently approved the spirit behind these cases when we decided *In the Matter of the Application of Ellen Gaul-*

*kin,* 69 *N. J.* 185 (1976), and expressly aligned ourselves with the "social and legal recognition of spousal autonomy and retention of separate identities and interests" in the marital relationship. *Id.* at 194. We in no way disavow that position nor turn our back on the modern rejection of spousal oneness before the law. Rather it is our awareness of the extraordinary difference between the context in which cases such as *King, Ft. Lee Savings & Loan Ass'n,* and *Gaulkin* have developed and the context of this case that prompts today's decision.

■■ When a spouse signs a petition under *N. J. S. A.* 40:49–27 as a taxpayer, he or she does not *act for* the marital partner, but rather expresses a positive incident of the status of taxpayers granted by the statute. Both spouses are taxpayers when they own by the entirety, and while neither incurs a personal liability, failure to pay the property tax has an identical effect upon the entire interest of each spouse. The referendum provision of the Home Rule Act specifically covers an ordinance "authorizing the incurring of indebtedness," *N. J. S. A.* 40:49–27, and empowers taxpayers to halt its passage if their property interests reach a sufficient level. The logical inference is that inasmuch as taxpayers as a class will be burdened by implementation of a funding ordinance, it is to them as a class that the value and benefit of the statute are directed. In this sense the statute is aimed not at voters but taxpayers.

■ By signing the petition as a taxpayer, not as a voter, neither spouse co-opts, usurps, or forecloses the rights of the passive partner. Each valid signature supports the beginning of a mechanical process that leads not to defeat of the ordinance but to a referendum. When the procedure reaches the referendum point, the democratic process is fully vindicated by leaving to the eligible voters — as distinguished from taxpayers who may or may not be voters as well — the fate of the ordinance.

We are further persuaded to this construction by the signal effect of the verb "represent" in the statute. The petition is sufficient to compel a referendum if it is signed by taxpayers who *represent* 10% of the assessed value of the municipality. As an owner by the entirety and as a taxpayer who stands to lose all, not merely one-half, of his or her interest in the property if the tax burden is not met in full, each spouse may suitably represent the assessed value of the property for the purposes of the statutory provision.

To hold otherwise would be to limit severely the effectiveness of the statute. It is directed toward getting a proposal before the public through the effort of that segment of the public who will likely be called upon to support the proposal financially. In a consideration of the initiative and referendum provisions of the Faulkner Act, the Appellate Division recently characterized them as "two useful instruments of plebiscite power [which] provide a means of arousing public interest," and found that under ordinary principles of construction such provisions should be liberally construed. *Township of Sparta v. Spillane,* 125 *N. J. Super.* 519, 523 (App. Div. 1973) ; see also *D'Ascensio v. Benjamin,* 137 *N. J. Super.* 155, 163 (Ch. Div. 1975). The referendum provision in the Home Rule Act is equally useful and important, and we have an obligation to promote, where appropriate, its beneficial effects. Therefore, while we recognize the sound legal principles reflected in the current judicial distaste for the institution of tenancy by the entirety, we do not feel this case should be caught up in the retreat from that form of ownership. Instead, we take the opportunity to isolate an aspect of tenancy by the entirety which enhances rather than diminishes the rights of each spouse.

There is in addition a practical reason for permitting one spouse to represent the full assessed value when he or she signs a petition pursuant to *N. J. S. A.* 40:49–27. The trial judge here refused plaintiff's offer of proof that, to his own personal knowledge, certain parties signing the petition

had been widowed since the tax rolls were prepared. No mechanism exists for documenting on the tax rolls the change in ownership due to death of one of the joint owners of property; the tax collector receives notification of a change in ownership only upon the execution and recording of a deed. Thus it can develop that the signature of the survivor is in fact that of the sole owner, whereas the tax rolls continue to reflect an ownership by the entirety. Allowing one signature to represent the full assessed value avoids such situations which do not square with either the intent of the statute or procedural fairness.

## III

■ ■ For related reasons we reject the Township Clerk's decision to void corporate signatures unsupported by some evidence that the person signing was properly authorized. This unduly burdens corporate taxpayers, who are equally affected by the bond ordinance[3] and who should benefit from the referendum provision without resort to cumbersome steps to qualify. The inclusion of street names and numbers on the petition affords the Clerk the opportunity to verify the signatures against the tax rolls, and to the extent that this

---

[3]Plaintiff is the majority stockholder in C.S.R. Realty. The tax bills for this property are issued to "C.S.R. Realty c/o John Retz." Defendants have attacked plaintiff's standing in this action because he is not an individual taxpayer in the township and because he did not sign his name to the petition. As to the former, his corporate taxpayer status gives him a sufficient stake in the litigation, see *Crescent Park Tenants Ass'n v. Realty Equities Corp.*, 58 *N. J.* 98, 107 (1971). Had plaintiff signed his own name to the petition, doubtless it would have been stricken because "John Retz" does not appear on the Township's tax rolls. The corporate signature that would be plaintiff's alternative would also have been rejected, as we have seen; and to the extent plaintiff argues corporate signatures properly belong on the petition, he demonstrates "real adverseness," *Crescent Park Tenants Ass'n, supra* at 107. Defendants can hardly advance a meritorious challenge to plaintiff's standing when their own actions, in part, would deny him a place on the petition.

is so, a presumption of validity should attend the petition absent any facial irregularity.

Because the petition's sufficiency is established by our holding that one spouse may represent the entire assessed value of property held by the entirety, and that corporate signatures are valid without additional documentation, we need not decide the validity of certain signatures which use nicknames. However, a word in this regard is in order. Plaintiff points out instances where the Township Clerk accepted the abbreviation "Wm." or the name "Bill" if the signer's name on the tax rolls appeared as William, but struck substitutions of, for example, "Peggy" for Margaret, "Betty" for Elizabeth, and "Harry" for Harold. The persons so signing are still readily identifiable. While some caution is appropriate, we note that the gingerly approach taken here is entirely inconsistent with the spirit of this opinion.

## IV

The judgment of the Appellate Division is reversed. Defendants will certify the validity of the protest petition and hold an election in accordance with the provisions of *N. J. S. A.* 40:49–27.

*For reversal*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*For affirmance*—None.