162 N.J. Super. 375 (1978)
392 A.2d 1243
ALONZO W. LAWRENCE, MARY DI SAVINO, THE RAHWAY TAXPAYERS ASSOCIATION, PLAINTIFFS,
v.
ROBERT W. SCHROF, THE RAHWAY CITY CLERK AND MUNICIPAL COUNCIL OF THE CITY OF RAHWAY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided September 14, 1978.
*377 Mr. Paul R. Williams, Jr. for plaintiffs (Messrs. Williams & Flynn, attorneys; Mr. Williams on the brief).
Mr. Alan J. Karcher, Director of Law, City of Rahway, for defendants (Messrs. Karcher, Reavy & Karcher, attorneys; Mr. Karcher on the brief).
FELLER, J.S.C. (retired, temporarily assigned on recall).
This is an action in lieu of prerogative writs. On the return date of the order to show cause defendants moved for dismissal of the complaint or, in the alternative, for summary judgment.
The City of Rahway operates under a mayor-council form of government under the provisions of the Faulkner Act. On July 6, 1978 defendant the municipal council passed an ordinance entitled "BOND ORDINANCE TO AUTHORIZE AND REAUTHORIZE THE CONSTRUCTION OF A NEW CITY HALL AND POLICE HEADQUARTERS AT MAIN STREET AND EAST MILTON AVENUE TO AUTHORIZE AND REAUTHORIZE THE ACQUISITION OF LAND THEREFOR, IN THE CITY OF RAHWAY, IN THE COUNTY OF UNION, NEW JERSEY *378 TO APPROPRIATE AND REAPPROPRIATE THE SUM OF $4,450,000 TO PAY THE COST THEREOF, TO APPROPRIATE AND REAPPROPRIATE A DOWN PAYMENT THEREFOR, TO AUTHORIZE AND REAUTHORIZE THE ISSUANCE OF BONDS TO FINANCE SUCH APPROPRIATION AND REAPPROPRIATION, AND TO PROVIDE FOR THE ISSUANCE OF BOND ANTICIPATION NOTES IN ANTICIPATION OF THE ISSUANCE OF SUCH BONDS." Said ordinance provided for the appropriation of $4,450,000 for the cost of construction of a new city hall and police headquarters building in the City of Rahway.
On July 10, 1974 the original ordinance was passed authorizing the construction of a new city hall and police headquarters at the above location, and authorized the issuance of bonds in the sum of $2,000,000 for this purpose. On June 24, 1976 another ordinance was passed providing for the construction and authorizing the issuance of bonds for this purpose in the sum of $3,000,000. The ordinance of July 6, 1978 raised the authorized bond issue from $3,000,000 to $4,450,000 an increase of $1,450,000.
Plaintiffs caused petitions to be circulated to obtain signatures by registered voters of the City of Rahway demanding a referendum on Ordinance No. A-15-78 passed on July 6, 1978. Plaintiffs concede that they have requested a referendum on this latest ordinance because it increased the authorized bond issue from $3,000,000 to $4,450,000.
The City of Rahway is governed by the provisions of N.J.S.A. 40:69A and the provisions of 40:69A-185 provide that within 20 days after final passage of any ordinance, when a petition protesting the passage of such ordinance shall be filed with the municipal clerk and signed by 25% of the registered voters of the municipality, the ordinance shall be suspended until a referendum shall be considered by the voters at the next election.
The individual plaintiffs contend that they obtained the required 25% within the 20 days. Said petitions were deposited *379 with defendant Robert W. Schrof, the Clerk of the City of Rahway, on July 24, 1978.
On August 14, 1978 Schrof delivered to plaintiffs a copy of a letter delivered to defendant municipal council in which he ruled the petitions filed were invalid. He further stated in his letter that "Notwithstanding any of the above, the City Attorney has ruled as per his attached opinion that this entire matter is not even subject to a referendum, since a referendum or petition drive is out of time with the original ordinance on this matter."
N.J.S.A. 40:69A-188 provides that if the municipal clerk determines that the petition is insufficient, a supplemental petition may be filed with the municipal clerk within ten days after the municipal clerk has notified petitioners of the insufficiency of the petition. Plaintiffs are presently trying to correct the alleged insufficiencies listed by defendant Schrof, but since he has stated that the entire matter is "not even subject to a referendum" any action taken by plaintiffs or any of the other taxpayers and voters of the City of Rahway to correct the alleged insufficiencies to the petition would be of no value.
Plaintiffs further contend that under the provisions of N.J.S.A. 40:49-27 any ordinance authorizing the incurring of any indebtedness may be the subject of a referendum if protest against the incurring of the indebtedness is filed in the office of the municipal clerk, signed by taxpayers representing 10% in the amount of the assessed valuation of the municipality, in which case such ordinance shall remain inoperative until that proposition is ratified at an election to be held for that purpose  and that this was done.
Plaintiffs alleged that defendant City Clerk Schrof has failed to determine whether petitioners represent 10% of the amount of the assessed valuation of said municipality. Plaintiffs contend that the petitions filed were proper petitions and that the ordinance should, therefore, be placed on the election ballot in accordance with the provisions of N.J.S.A. 40:49-27.

*380 I
In New Jersey, unlike other states, there is no constitutional right to a referendum but only a statutory right where appropriate legislation exists. The right of referendum does not exist as a recognized limitation upon legislative power. N.J. Const. (1947). Art. IV, § I, par. 1: "The legislative power shall be visited in a Senate and General Assembly." The word "referendum" does not appear in the Constitution, nor is it alluded to. Epstein v. Long, 133 N.J. Super. 590, 602 (Law Div. 1975); Smith v. Livingston Tp., 106 N.J. Super. 444, 452-453 (Ch. Div. 1969) aff'd o.b. 54 N.J. 525 (1969); Eatontown v. Danskin, 121 N.J. Super. 68, 76 (Law Div. 1972). Thus, plaintiffs' right to have the question under consideration to be determined by referendum depends upon whether or not said referendum statutes are applicable.
The pertinent referendum statutes, N.J.S.A. 40:69A-184 through 191, provide that the voters have the power to approve or reject any ordinance passed by city council against which a referendum petition has been filed. If a petition protesting an ordinance has been filed within 20 days of the passage of such ordinance  and it is in order  the ordinance shall be suspended from taking effect until the referendum has been held.
The statutes further provide that upon filing the petition, the ordinance shall be suspended, either until the petition is withdrawn or until the ordinance is repealed by vote of the governing body or approved or disapproved by the voters.
In the case of Cuprowski v. Jersey City, 101 N.J. Super. 15, 22-23 (Law Div. 1968), aff'd 103 N.J. Super. 217 (App. Div. 1968), plaintiffs sought to compel the Jersey City Clerk to accept a petition requesting that the city budget be subject to referendum. The court held that the statute providing that all ordinances be subject to referendum applies to ordinances of a legislative nature and is not intended to include resolutions or ordinances of an executive or administrative *381 nature. The court stated that municipal corporations have both legislative and administrative powers, and this holds true whether the act is nominally designated as a resolution or ordinance.
Therefore, it would appear that in stating that all ordinances shall be subject to the referendum provisions of N.J.S.A. 40:69A-185 et seq. the Legislature was referring to ordinances of a legislative nature and did not intend to include ordinances of an executive or administrative nature. See Tellanrok Peoples Utility Dist. v. Coates City Clerk, 174 Or. 476, 149 P.2d 558 (Sup. Ct. 1944).
The ordinance recites that as a result of the ordinances previously passed on July 10, 1974, November 5, 1974 and June 24, 1976, bond issues were authorized in the sum of $3,000,000 and that the municipal council now finds and determines that an additional $1,450,000 is required for improvements. Although the ordinance of July 1978 authorizes and reauthorizes the purchase of property and the construction of the municipal complex, in effect the ordinance was passed to authorize a bond issue for an additional $1,450,000.
Section 12 of the ordinance states that the ordinance shall constitute separate and independent authority for the acquisition and making of the improvements authorized and reauthorized therein.
No petitions for a referendum were filed against the ordinances which originally authorized construction or the purchase of land, and apparently there were no objections to the same.
The courts must draw the line in these situations and in doing so must balance two interests: the protection of city government from harassment on the one hand and the benefits of direct legislation by the people on the other hand. Cuprowski, supra 101 N.J. Super. at 24-25; 3 Stanford L.R. ___ (1951).
*382 There seems to be no precedent in this State to apply to the facts herein. The question to be decided is whether any changes in the bond ordinance constitute legislative changes and are subject to referendum, as plaintiffs contend, or are administrative changes as defendants contend, and therefore not subject to referendum. In Keigley v. Bench City Recorder, 97 Utah 69, 89 P.2d 480 (Sup. Ct. 1939), the court held that after approval by the voters of an ordinance authorizing a bond issue for construction of an electric system, a provision in a later ordinance changing the financial plan, which resulted in stretching it over 20 years and 18 annual payments of principal instead of 15 years with 13 annual payments, was legislative in character subject to referendum.
In the present case the policy of the council as to the means and manner of financing the complex was enunciated in the ordinance, of 1974 and 1976. This financial policy was departed from in the latest ordinance. An increase of $2,450,000 over the original ordinance of $2,000,000 and an increase of $1,450,000 over the second ordinance of $3,000,000 represents a change of policy and goes beyond administrative detail and into the field of legislative policy. See Keigley, supra. See also, North Sacramento v. Irwin, 94 Cal. App. 652, 271 P. 788 (D. Ct. App. 1928), reh. denied 94 Cal. App. 652, 272 P. 767 (1928).
Referendum provisions are to be liberally construed and it was the intent of the Faulkner Act to confer the greatest possible power of local self-government and to encourage citizen interest and participation. Meridian Dev. Co. v. Edison Tp., 91 N.J. Super. 310 (Law Div. 1966); Newark v. Civil Service Dept., 68 N.J. Super. 416 (App. Div. 1961). Although the preparation, approval and adoption of a municipal budget on an annual basis is administrative in character, the adoption of an amendment to a bond issue providing for the increases set out above, over the original ordinance adopted approximately four years previously, which amendment provides for an increase of $1,450,000 from the bond issue authorized approximately *383 two years previously, is more permanent and general in character than an annual budget. See People v. Centralia, 1 Ill. App. 2d 228, 117 N.E.2d 410 (App. Ct. 1954). Furthermore, the amendment to the ordinance by its very terms increases the gross debt of the City of Rahway by $1,377,500.
These increases were substantial. Could these increases from the terms of the original ordinance be reasonably viewed as being within the ambit of the intentions of the members of council when the original ordinance was adopted? Was a delay of four years contemplated by the council members at the time  even though the delay may have been unavoidable? The answer would seem to be in the negative.
Therefore, it is the opinion of this court that the amendment of July 6, 1978 is legislative in character and subject to a referendum.

II
In the second count of the complaint plaintiffs seek alternative relief under the provisions of the Home Rule Act (N.J.S.A. 40:49-27) in addition to the relief sought under the terms of the Faulkner Act (N.J.S.A. 40:69A-185) in the first count. This latter statute provides for a referendum if a petition is signed by a certain percentage of the registered voters in a municipality. Under the Home Rule Act a referendum is provided for if the petition is signed by taxpayers representing 10% in the amount of the assessed valuation of such municipality.
The petitions submitted by plaintiffs provided for the signatures of registered voters  not taxpayers  and contained no statement that those who signed owned property representing 10% of the assessed valuation of property in the city. It is evident that these petitions were submitted, circulated and signed under the provisions of the Faulkner Act, not the Home Rule Act, and were submitted to the *384 city clerk as such. Naturally, his investigation consisted of a check of the signatures on the petitions, to determine whether or not they were registered voters.
Plaintiffs cite Retz v. Saddle Brook Mayor & Council, 69 N.J. 563, 563 (1976), in support of their argument that the Home Rule Act should apply. However, in the complaint filed herein the only allegation is that the signatures represented 10% of the assessed valuation in the city. This is rather vague and indefinite. In Retz plaintiff in his complaint claimed that the petition contained 989 names, including his own, and that such signatures represented ownership of property having an assessed valuation of $19,759,960.
The petitions in question do not reveal that they were signed by taxpayers representing 10% of the assessed valuation in the city. The petitions do reveal that they were signed by registered voters. There is no designation as to which voters are taxpayers and which are not taxpayers. Furthermore, the complaint does not allege the total assessed valuation represented by those who signed the petitions.
Therefore, the only remedy available to plaintiffs is to proceed under the terms of the Faulkner Act.

III
Under the terms of N.J.S.A. 40A:2-18 (Local Bond Law) it is provided that a bond ordinance shall take effect 20 days after the first publication thereof after final adoption. A bond ordinance which authorizes obligations to fund, refund, renew, extend or retire obligations issued or authorized pursuant to that chapter or notes or bonds issued or authorized pursuant to any act of which the chapter is a revision shall not be subject to a referendum.
However, this section, which provides that bond issues as described shall not be subject to a referendum, does not apply to a bond ordinance to appropriate funds for a municipal complex. Retz, supra. In that case the court *385 held that the bond ordinance was intended to fund a new municipal building housing administrative offices and the police department and other improvements, including an addition to the fire house and street widening, and was subject to a referendum.
There is no exception made in Retz that an amendment to a bond ordinance to fund a new municipal complex is not subject to a referendum. Furthermore, § 12 of the ordinance passed on July 6, 1978 states: "This ordinance shall constitute separate and independent authority for the acquisition and making of the improvements authorized and reauthorized therein". It is apparent from this statement that the council, in passing the latest ordinance, was in effect passing an amendment authorizing and reauthorizing the improvements. Thus, this ordinance provided for a bond ordinance to authorize and reauthorize the construction of a new city hall and police headquarters and to authorize and reauthorize the acquisition of land therefor and to appropriate and reappropriate the sum of $4,450,000 to pay the cost thereof. This definitely was a bond ordinance to appropriate funds for a municipal complex and is subject to a referendum  if the effect of said ordinance is legislative in nature.
Therefore, it is the opinion of this court that for the reasons set out (1) the motion to dismiss the first count of the complaint is denied, and (2) the motion to dismiss the second count of the complaint is granted.

ADDENDUM
The city clerk has determined that the petitions filed were insufficient, defective and invalid. This raises an issue of fact. Therefore, a hearing will be held on this matter on Wednesday, September 20, 1978 at 9 A.M.