LIBERO D. MAROTTA, PLAINTIFF, v. PETER A. LEONE, CITY CLERK CITY OF UNION CITY; CITY OF UNION CITY, COUNTY OF HUDSON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, WILLIAM V. MUSTO, HARRISON C. HULTMAN, ROBERT C. BOTTI, RONALD DARIO AND ARTHUR WICHERT, DEFENDANTS.

Superior Court of New Jersey
Law Division—Hudson County

Decided November 14, 1979.

*Libero D. Marotta, pro se.*

*George J. Kaplan* for defendant Peter A. Leone.

*Herbert G. Klitzner* for defendants City of Union City, William V. Musto, Harrison C. Hultman, Robert C. Botti, Ronald Dario and Arthur Wichert (*Lewis* and *DeClemente*, attorneys; *Thomas A. DeClemente* of counsel).

BILDER, J. S. C.

This is an action in lieu of prerogative writs to compel the City Clerk of Union City to examine a petition protesting a bond ordinance and to certify the result of his examination as required by *N.J.S.A.* 40:49 -27. It raises the issue, not yet explicitly passed on, as to the formal requirements of a protest against the incurring of indebtedness under that statute. In dispute is the sufficiency of plaintiff's petition.

On October 4, 1979 the Board of Commissioners of the City of Union City passed a bond ordinance entitled:

BOND ORDINANCE TO AUTHORIZE THE ACQUISITION OF CERTAIN REAL PROPERTY, STRUCTURES AND IMPROVEMENTS THEREON FOR THE PURPOSE OF ESTABLISHING MUNICIPAL OFFICES THEREIN AND OTHER PUBLIC PURPOSES RELATED THERETO, SAID PROPERTY BEING DESIGNATED AS BLOCK 123, LOTS 14 21 ON THE OFFICIAL TAX MAP OF THE CITY OF UNION CITY, IN AND FOR THE CITY OF UNION CITY, IN THE COUNTY OF HUDSON, NEW JERSEY; AND TO AUTHORIZE RENOVATIONS AND REPAIRS TO THE FIREHOUSES AT 16TH AND 29TH STREETS, AND RENOVATIONS AND REPAIRS TO CITY HALL AND ROOSEVELT STADIUM; AND TO AUTHORIZE EXPANSION OF THE AMBULANCE CORPS BUILDING AT 16TH STREET: AND TO APPROPRIATE THE SUM OF $3,200,000 TO PAY THE COST THEREOF, TO MAKE A DOWN PAYMENT AND TO AUTHORIZE THE ISSUANCE OF $3,040,000 OF BONDS TO FINANCE SUCH APPROPRIATION, AND TO PROVIDE FOR THE ISSUANCE OF BOND ANTICIPATION NOTES IN ANTICIPATION OF THE ISSUANCE OF SUCH BONDS. (hereinafter "bond ordinance")

Publication of the bond ordinance was duly made on October 9, 1979 and thereafter plaintiff and others sought to protest the ordinance as was their right under *N.J.S.A.* 40:49 27.

On October 19, 1979, within the time provided by law, plaintiff filed with defendant city clerk a document, consisting of 170 pages and containing 1189 signatures, purporting to be a petition protesting the bond ordinance (hereinafter "petition").

Each page of the petition was headed by a recital which read as follows:

Each of the undersigned, a taxpayer of the City of Union City, owner of real property stated opposite his or her name, does hereby join in a Petition protesting the adoption of an Ordinance by the Board of Commissioners of the City of Union City, entitled:

"BOND ORDINANCE TO AUTHORIZE THE ACQUISITION OF CERTAIN REAL PROPERTY, STRUCTURES AND IMPROVEMENTS THEREON FOR THE PURPOSE OF ESTABLISHING MUNICIPAL OFFICES THEREIN AND OTHER PUBLIC PURPOSES RELATED THERETO, SAID PROPERTY BEING DESIGNATED AS BLOCK 123, LOTS 14 -12 ON THE OFFICIAL TAX MAP OF THE CITY OF UNION CITY, IN AND FOR THE CITY OF UNION CITY, IN THE COUNTY OF HUDSON, NEW JERSEY; AND TO AUTHORIZE RENOVATIONS AND REPAIRS TO THE FIREHOUSES AT 16th and 29th STREETS, AND RENOVATIONS AND REPAIRS TO CITY HALL AND ROOSEVELT STADIUM; AND TO AUTHORIZE EXPANSION OF THE AMBULANCE CORPS BUILDING AT 16th STREET: AND TO APPROPRIATE THE SUM OF $3,200,000.00 TO PAY THE COST THEREOF; TO MAKE A DOWN PAYMENT AND TO AUTHORIZE THE ISSUANCE OF BOND ANTICIPATION NOTES IN ANTICIPATION OF THE ISSUANCE OF SUCH BONDS."

There followed beneath this, spaces for ten persons to append their signatures and indicate their property. Finally, there appeared space for a certification under oath that the signer had witnessed the petition signatures. A comparison of the descriptions as contained in the bond ordinance and the petition shows that the latter contains three typographical errors: (1) the

inversion of the number 21 in the lot description in the fifth line of the bond ordinance; (2) the substitution of a semicolon for a comma after the word "thereof" in the 13th line of the bond ordinance, and (3) the omission of the phrase "$3,040,000 of bonds to finance such appropriation, and to provide for the issuance of" in the 14th and 15th lines of the bond ordinance.

On October 25, 1979 defendant city clerk returned the petition to plaintiff together with a copy of a letter from the assistant corporation counsel containing an opinion that the petition is invalid and "fatally defective." The refusal of the city clerk to verify that the petition contains the signatures of taxpayers representing 10% of the assessed value of property in Union City, to file the said petition and to certify it as to filing and sufficiency as is required by *N.J.S.A.* 40:49 27, has led to the instant action in which plaintiff seeks to compel such action by defendant clerk and to insure that the bond ordinance shall remain inoperative unless and until ratified by popular election.

*N.J.S.A.* 40:49 27 reads as follows:

> Any ordinance authorizing the incurring of any indebtedness, except for current expenses shall become operative ten days after the publication thereof after its final passage, unless within said ten days a protest against the incurring of such indebtedness shall be filed in the office of the municipal clerk signed by taxpayers representing ten per cent in amount of the assessed valuation of such municipality, whose names appear on the last preceding assessment roll thereof, in which case such ordinance shall remain inoperative until a proposition for the ratification thereof shall be adopted, at an election to be held for that purpose, by a majority of the qualified voters of the municipality voting on the proposition, subject to the provisions of sections. 40:49-10 to 40:49 12 of this title.

> The certificate of the clerk of the municipality filed in his office as to the filing or sufficiency of any protest shall be conclusive for the purposes of this section.

> At least ten days before any such election, notice thereof shall be published once in a newspaper published in the municipality, or if there be no such newspaper, then in a newspaper published in the county and circulating in the municipality.

Unlike similar statutes providing for analogous referendums in other situations, *N.J.S.A.* 40:49 27 neither contains within itself nor is accompanied by any specific direction as to the form of the petition. Compare, for example, *N.J.S.A.* 40:74 5 and 6 (general legislative ordinances); *N.J.S.A.* 40:69A 168 to 170 (recall); *N.J.S.A.* 40:69A 184 to 186 (initiative and referendum). It is defendant's contention that in the absence of explicit direction, *N.J.S.A.* 40:49 27 should be read *in pari materia* with *N.J.S.A.* 40:74 11, which sets forth the requirements for petitions proposing or remonstrating against general legislative ordinances. This position was implicit in the corporation counsel's letter wherein defective verification and, more importantly, a failure to have each page verified by a signer of that very page is adverted to. This latter failure is fatal to a *N.J.S.A.* 40:74 11 petition. *In re Petition of Smith,* 114 *N.J.Super.* 421, 437 (App.Div.1971). Additionally, corporation counsel noted in its opinion an inexactness of language both as to the form of protest, the proposal attached and the relief desired.

### *What Form is Required of a N.J.S.A. 40:49 27 Petition?*

■ As to the form and content of the petition, *N.J.S.A.* 40:49 27 merely provides that it shall be "a protest against the incurring of such indebtedness" and that it shall be signed "by taxpayers representing ten per cent in amount of the assessed valuation of such municipality, whose names appear on the last assessment roll thereof." Apart from this, no direction is given either within the section, by internal reference to other sections or by other sections within the same chapter (chapter 49 of *Title* 40). The absence of any further direction must be viewed in the light of other analogous provisions where the Legislature has set forth such direction with specificity (see *N.J.S.A.* 40:74 11; 40:69A 170; 40:69A 186) and in the light of the well recognized

principle of liberal interpretation in favor of the electorate. See *In re Petition of Smith, supra* at 428; *D'Ascensio v. Benjamin*, 137 *N.J.Super.* 155, 163 (Ch.Div.1975), aff'd 142 *N.J.Super.* 52 (App.Div.1976).

In reviewing analogous provisions I note significant differences exist not only in the fact that the Legislature has seen fit to provide specific direction as to form but also in the inclusion of provisions for an amendatory process whereby technical defects can be cured. Thus, the failure to comply with the technical requirements of *N.J.S.A.* 40:74 11 can be cured by an amendatory petition within ten days of notice of insufficiency. *N.J.S.A.* 40:74 12. And deficient recall, initiative and referendum petitions may similarly be amended. *N.J.S.A.* 40:69A 170; 40:69A 188. No such provision for amendment exists for *N.J. S.A.* 40:49-27 petitions.

Viewed without reference to the technical requirements of analogous statutes which defendant would have me import into *N.J.S.A.* 40:49 27, plaintiff's petition would seem to comply with the legislative command if it contains the signatures of the requisite percentage of the taxpayers and in a substantial sense protests against the incurring of the bond indebtedness provided for by the ordinance in question. Whether the former requirement has been met can only be determined by the city clerk to whom this function is delegated by the statute, subject, of course, to appropriate judicial review. He has thus far refused to make this determination but I shall assume *arguendo* that the requisite signatures are there. Whether the latter requirement has been met is a question of law for this court.

In determining whether the petition meets the requirements of a protest, a court should eschew technicalities and use as tests reasonableness and substantiality. *See Houman v. Pompton Lakes*, 155 *N.J.Super.* 129, 169 170 (Law Div.1977). Does the petition, taken as a whole, fairly advise a reasonable person that this is a protest against an ordinance authorizing the incurring of a $3 million bond indebtedness for the purpose of

certain improvements set forth in the ordinance? I find it does. Defendant points—correctly—to certain technical errors made by plaintiff in copying the ordinance description. To strike down the petition on the basis of typographical errors would be to disenfranchise taxpayers because of a harmless error made by plaintiff. Such errors should not serve to invalidate a petition unless they substantially affect the meaning of the petition—create a real doubt as to what signers of the petition understood to be its nature and purpose. It must be remembered that this is a referendum petition—a petition to obtain a public voice on a matter of general interest. While plaintiff may have been the catalyst for the petition and, indeed, even its creator, he has no cognizable personal interest apart from that shared by all the public. The petition represents the will of the signers, not that of the solicitors. See the discussion *In re Petition of Smith, supra,* 114 *N.J.Super.* at 429 431.

Defendants have expressed concern about the lack of verification—a feature which experience has made so much a part of a petition as to make it seem naked without one. Verification of signatures by petitioners is a redundant safeguard. In all of these popular petitions it is the verification of a public official—here the city clerk—which protects the public with respect to the sufficiency of the petitions—the genuineness of the signatures. A legislated redundant safeguard may be prudent but it is not necessary.

Although the issue in this case has not been previously discussed by our courts, it should be noted that *Retz v. Saddle Brook Tp.,* 69 *N.J.* 563 (1976), would seem to be a holding in accord with the principles herein enunciated. In *Retz* the Supreme Court ordered a town clerk and a governing body to "certify the validity of the protest petition and hold an election in accordance with the provisions of *N.J.S.A.* 40:49 27." *Id.* at 573. As to its form we are told, "The petition . . . expressed only the signers' protest. It was silent concerning a referendum and did not purport to comply with or enforce

operation of any statute." *Id.* at 566. From the opinion below we learn a bit more:

> The petition contained no reference to the statute pursuant to which it was filed, or affidavits from petition circulators attesting to the authenticity of signatures, and no specific request for a referendum beyond the statement of protest. [*Retz v. Saddle Brook Tp.*, 134 *N.J.Super.* 290, 292 (App.Div.1975)]

Neither opinion discussed the insufficiency of the petition as to form, the Appellate Division concluding the petitions were insufficient in amount—*i. e.*, that the taxpayer petitioners did not represent 10% in amount of the assessed valuations and the Supreme Court, in reversing, concluding that they did.[1] In view of the form of petition as disclosed by the Supreme Court and Appellate Division opinions, the action of the Supreme Court in ordering the certification and election would seem of necessity to encompass a determination that neither the lack of affidavits from petition circulators attesting to the authenticity of signatures nor a specific request for a referendum beyond the statement of protest is fatal to a *N.J.S.A.* 40:49 27 petition.

Since I have concluded that the petition meets the formal requirements of *N.J.S.A.* 40:49 27, it will be necessary that the city clerk determine whether it meets the further requirement that there be signatures of owners of property equal to 10% of the assessed valuation whose names appear in the last preceding assessment roll. The means by which this is accomplished is, of course, a matter within his discretion. *D'Ascensio v. Benjamin*, 142 *N.J.Super.* 52 (App.Div.1976).

---

[1]The determinative issue before both courts was whether the signature of one spouse on a taxpayers' petition may be considered to represent the full assessed value of property held by the entirety. The Supreme Court, reversing the court below, held the signature of one spouse sufficient to represent the full assessed value and found the petitions to be sufficient in amount.

I will therefore enter an order directing the city clerk to determine the sufficiency of the signatures and continuing the injunction heretofore entered so that the Bond Ordinance shall remain inoperative until the sufficiency of the petition is determined and, if found sufficient, a proposition for ratification shall have been adopted by the electorate.