STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JOHN ULESKY, DEFENDANT-APPELLANT.

Argued February 18, 1969—Decided May 5, 1969.

*Mr. Paul J. Feldman* argued the cause for appellant.

*Mr. Harold Feinberg* argued the cause for respondent.

The opinion of the court was delivered
PER CURIAM. Defendant was convicted of violating an ordinance of the Borough of Belmar requiring registration

by persons convicted of crime. The County Court affirmed the judgment, 100 *N. J. Super.* 287 (1968), and we certified the appeal to the Appellate Division before hearing there.

The ordinance provides that any person present in the Borough for more than 24 hours must register with the Chief of Police if within the past ten years such person has been convicted here or elsewhere of a crime or a narcotics violation. Such person must furnish a written statement under oath, may be photographed or fingerprinted, must carry a card furnished him, and for a violation is subject to a fine not exceeding $200 or imprisonment not exceeding 90 days or both.

Defendant admittedly comes within the ordinance and admittedly did not comply with it. Defendant concedes also that he knew of the ordinance and its terms, and hence does not rely upon *Lambert v. People of State of California,* 355 *U. S.* 225, 78 *S. Ct.* 240, 2 *L. Ed.* 2d 228 (1957), rehearing denied, 355 *U. S.* 937, 78 *S. Ct.* 410, 2 *L. Ed.* 2d 419 (1958), which held such an ordinance could not be enforced against one who had no notice of it. He asserts sundry constitutional objections and also that in any event State Legislation has preempted the field and foreclosed municipal action. We think the preemption claim must be upheld and therefore we need not deal with the constitutional challenges.

We assume for present purposes that, to the extent to which the subject is within the reach of the police power of the State, the Legislature could delegate the legislative power to local government. The objective of the ordinance is to alert the local police department to the presence of persons convicted of crime. The premise is that recidivism is a reality, and hence law enforcement will be aided by an awareness of individuals whose prior offenses reveal an added risk. The problem no doubt varies locally in intensity. Thus resort areas are especially attractive to a floating criminal element. Indeed it appears that in our State the municipalities which have legislated on the subject are either along the shore or have or are near race tracks. Elsewhere, too,

local government has legislated upon this subject. See generally, Note, 103 *U. Pa. L. Rev.* 60 (1954); Annotation, 82 *A. L. R. 2d* 398 (1962). Hence, as we have said, we assume the Legislature could have delegated to local government the power to deal with the problem, subject of course to constitutional limitations which would apply to legislative action by the State itself. And we assume, too, that the general grant of police power in *R. S.* 40:48-2 would be sufficient to achieve that delegation. See *Summer v. Township of Teaneck*, 53 *N. J.* 548 (1969).

■■ But of course it is elementary that a municipality may not exert the delegated police power in terms which conflict with a State statute, and hence a municipality may not deal with a subject if the Legislature intends its own action, whether it exhausts the field or touches only part of it, to be exclusive and therefore to bar municipal legislation. As a general proposition an intent to preempt the power of municipalities will not be lightly inferred, *Kennedy v. City of Newark*, 29 *N. J.* 178, 187 (1959), but in the final analysis the answer must depend upon the particular setting, the values involved, and the impact of local legislation upon those values.

Here we are dealing with an ordinance which imposes a burden upon persons convicted of crime. (We do not mean that the requirement for registration is intended to be punitive; on the contrary, we assume the aim is solely to protect against the prospect of future criminal activity.) The ordinance touches all who have transgressed and does so in far-reaching terms. It should be stressed that we are not dealing with the registration or licensure of individuals who propose to engage in activities as to which a municipality may properly seek proof of the necessary good character. *Mogolefsky v. Schoem*, 50 *N. J.* 588 (1967); *Belleville Chamber of Commerce v. Town of Belleville*, 51 *N. J.* 153 (1968). Rather the basis of the demand for registration is mere presence, wholly unrelated to any conduct.

If every municipality required registration for no reason other than being within its borders, the cumulative burden would be intense. It could crush a man if he had to reveal a past error wherever he abides or whenever he sojourns in another place. In light of this substantial burden, we should be sensitive to any action of the Legislature which evidences consideration of the problem and a wish that the police power be pressed no further than the Legislature itself has exerted it.

In this regard, we are referred to statutes calling for reporting of arrests and convictions to a State agency and the maintenance of records at that level. See *N. J. S. A.* 52:17B–5.1 to 5.5; *N. J. S. A.* 53:1–12 to 20.4. We do not think such statutes are very persuasive since the ordinance is designed to the distinct end of alerting the local police chief to the advent of a convicted person and central reporting of arrests and convictions does not itself serve that end or reflect a decision upon it.

Of at least general relevancy are those statutes concerned with probation and parole which spell out the burdens to be imposed upon a person convicted of crime. Ordinances similar to the one now under consideration could defeat a State policy with respect to rehabilitation when they call for registration beyond the period of supervision the State and its agencies have provided and do so on the basis of mere presence.

More to the point is the statute requiring narcotics offenders to register locally and to report changes of address. *N. J. S.* 2A:169A–1 *et seq.* That statute deals explicitly with the subject of local awareness of the presence of persons convicted of offenses of a recidivistic cast. The Legislature having considered the subject and having acted with such particularity, there is reason to believe the Legislature was unwilling to say that other convictions warranted such restraint upon the right of the individual merely to be or to move about. We should so conclude because of the values involved, for, as we have already mentioned, these ordinances

could collide with the State's overall policy for the rehabilitation of offenders, expressed in its program of probation and parole. It is not irrelevant to note that in terms of actual registrations under their provisions, these ordinances, as we are informed, have been quite unproductive.[1] Perhaps, too, it may be that the cumulative burden of legislation by all municipalities could exceed what due process of law would permit if it should appear the same public need could be met with a more modest burden by a statewide program or a statute specifying some uniform local legislative approach.

It seems to us, therefore, that the subject is such that, while it does not foreclose the delegation of the State's police power to municipalities, it nonetheless advises against that course except under statutory guidance and restraint. For example, the Legislature, if it wished municipalities to deal with the matter, might well specify the particular crimes which it believes to be so suggestive of recidivism as to warrant the burden of registration, or prescribe a time limit upon the conviction, or require reciprocal recognition of registration among municipalities. The Legislature might conclude that if some program of local notification is desirable, there should be a central agency to which notice could be given for transmittal to a municipality as a more palatable alternative to successive appearances at each local police headquarters with repeated procedures including fingerprinting and photographing.

For these reasons we are constrained to hold that the State legislation to which we have referred operates to bar municipal legislation calling for registration by persons convicted of crime on the basis of mere presence. The Supreme Court of California reached the same conclusion on the basis of statutes in that State which, in sum total, are about the same as ours. *Abbott v. Los Angeles, 53 Cal.*

---

[1]Counsel for the Borough advised us that there were no registrations in 1965, four in 1966, four in 1967, and none in 1968.

*2d* 674, 3 *Cal. Rptr.* 158, 349 *P. 2d* 974, 82 *A. L. R. 2d* 385 (1960).

The judgment is reversed.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—Justice HANEMAN—1.