193 N.J. Super. 215 (1984)
473 A.2d 100
BOROUGH OF PITMAN, PLAINTIFF-APPELLANT,
v.
BARRY SKOKOWSKI, DIRECTOR OF THE DIVISION OF LOCAL GOVERNMENT SERVICES, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 9, 1983.
Decided February 1, 1984.
*217 Before Judges BOTTER, PRESSLER and O'BRIEN.
Warren H. Carr argued the cause for appellant (Cresse, Carr, Peaslee & Thompson, attorneys; Warren H. Carr on the brief).
Daniel P. Reynolds, Deputy Attorney General, argued the cause for respondent (Irwin I. Kimmelman, Attorney General of New Jersey, attorney, Deborah T. Poritz, Deputy Attorney General, of counsel; Daniel P. Reynolds on the brief).
The opinion of the court was delivered by O'BRIEN, J.A.D.
This case involves the effect of the transfer by a municipality to a lighting district of its expense in providing street lighting upon its "CAP base" under N.J.S.A. 40A:4-45.2.
On January 26, 1981 plaintiff Borough of Pitman (Borough) created a lighting district pursuant to N.J.S.A. 40:91-1 et seq. to *218 which it transferred responsibility for providing and paying for the Borough's street lighting services. Under that statute, the lighting district becomes a separate corporate entity with its budget to be approved annually by the voters.[1]
The procedure adopted resulted in "freeing up" moneys in the municipal budget which were previously expended for street lighting services as a way of increasing the "CAP base" upon which the municipality calculates its permissible spending limit for the year pursuant to the "CAP law."[2] To address this problem the Legislature supplemented N.J.S.A. 40A:4-45.2 by L. 1981, c. 64, § 1, which added a paragraph providing:
In each budget year subsequent to 1981, whenever any municipality shall have transferred to any local public utility, any local public authority or any special purposes district, during the immediately preceding budget year, or at any time during the current budget year prior to the final adoption of the budget, any service or function funded during the immediately preceding budget year, either partially or wholly from appropriations in the municipal budget, the municipality shall deduct from its final appropriations upon which its permissible expenditures are calculated pursuant to this section the amount which the municipality expended for that service or function during the last full budget year throughout which the service or function so transferred was funded from appropriations in the municipal budget.
The act was approved on March 9, 1981 to "take effect immediately, and shall be retroactive, except as specifically provided therein, to August 18, 1976."
*219 The introductory statement attached to this bill referred to the establishment of fire districts or garbage districts or other municipal authorities to furnish certain services as a "legal maneuver" which promotes the splintering of local government. The statement then describes the intent of the amendment to be that "... whenever a municipality transfers to a local public utility ... a service or function previously funded in the municipal budget ... [the municipality] shall subtract from its `CAP base' in the next [budget] year the amount it previously expended on that service or function."
On May 4, 1982 defendant Director of the Division of Local Government Services (Director) disapproved the Borough's municipal budget for 1982. He ruled that the budget exceeded the CAP law spending limitation because the Borough had not deducted from its 1981 final appropriations total an amount equal to what it had expended to provide street lighting services in 1980. The Director concluded that such deduction for purposes of computing the Borough's 1982 spending limitation was mandated by the March 9, 1981 supplement to N.J.S.A. 40A:4-45.2. The Director's decision was affirmed by the Local Finance Board of the Division of Local Finance (Board) on May 11, 1982. While the Board made no findings of fact nor conclusions of law in support of its resolution upholding the Director, at the hearing granted on the Borough's petition the Board indicated its understanding of the Borough's plight, but followed the advice of its counsel that the statute had to be applied as written.
The Borough concedes that the language of the statute requires retroactive application. Applying the statute, it is clear that in considering the Borough's budget for 1982 (a budget year subsequent to 1981) the Borough had transferred to a special purpose street lighting district during the immediately preceding budget year, i.e., on January 26, 1981, a service which had been partially funded during the immediately preceding budget year (1981) from appropriations in the municipality's budget. Accordingly, the statute mandates that the Borough deduct *220 from its final appropriations upon which its permissible expenditures were to be calculated in the budget year of 1982 the amount which the municipality expended for street lighting "during the last full budget year throughout which the services or functions so transferred was funded from appropriations in the municipal budget." That last full budget year in this case was 1980. For the year 1980 the Borough had appropriated $53,125 for street lighting.
The Borough does not contend that the Director and the Board have improperly applied N.J.S.A. 40A:4-45.2 to the Borough's 1982 budget. It concedes that the Legislative intent for the retroactive application of the statute is clear by its very wording. The Borough argues, however, that such retroactive application of the statute to its 1982 budget unconstitutionally divests it of a "vested right" in derogation of the Fourteenth Amendment of the United States Constitution and further results in "manifest injustice" to the Borough. The "vested right" alleged is the right to establish a lighting district as a means of creating a "valid legal exemption" to the "CAP" law.[3]
A municipality is a creature of the state and thus necessarily subordinate to its creator and can exercise only such powers as may be granted to it by the Legislature. Camden v. Byrne, 82 N.J. 133, 157 (1980); Moyant v. Bor. of Paramus, 30 N.J. 528, 535 (1959). As a political subdivision of the State, a municipality owes its very existence to the State and the extent of its powers and its privileges is entirely subject to the ultimate authority of the legislative process. Smith v. Goldman, 159 N.J. Super. 297, 300-301 (App.Div. 1978), aff'd subnom. Camden *221 v. Byrne, 82 N.J. 133 (1980). Thus a municipality's budgetary powers under the local budget law, N.J.S.A. 40A:4-1 et seq., and the local government CAP law, N.J.S.A. 40:4-45.1 et seq. are, like the budgetary process exercised by a county, clearly subject to the dominion of the Legislature. Clark v. Degnan, 83 N.J. 393, 399-400 (1980).
By virtue of being a political subdivision of the State, a municipality such as the Borough has no standing to invoke the protection of the Fourteenth Amendment against the State. Trenton v. State, 262 U.S. 182, 188, 43 Sup.Ct. 534, 537, 67 L.Ed. 937, 941 (1923); aff'g 97 N.J.L. 241 (E. & A. 1922); Newark v. State, 262 U.S. 192, 196, 43 Sup.Ct. 539, 540, 67 L.Ed. 943, 946 (1923); aff'g 97 N.J.L. 241 (E. & A. 1922); Camden Cty. v. Pennsauken Sewer. Auth., 15 N.J. 456, 470 (1954). Since a municipality exercises only such powers and possesses such privileges as are vested in it by the Legislature, it possesses no powers or privileges which cannot be altered or withdrawn at the will of the Legislature. Trenton v. State, 262 U.S. at 187-188, 43 S.Ct. at 536-537.
In undertaking public functions a municipality possesses no rights which it may assert to prevent the Legislature from altering the municipal powers or ability to carry out these functions in whatever way the Legislature may see fit. Id. at 185-190, 43 S.Ct. at 536-537; Camden v. Byrne, 82 N.J. at 157. Rather, the Legislature has complete control over restrictions that may be placed upon municipal spending. Clark v. Degnan, 83 N.J. at 399-400; N.J. State P.B.A., Local 29 v. Irvington, 80 N.J. 271, 299 (1979); cf. Camden v. Byrne, 82 N.J. at 158-159.
The Borough possessed no "vested right" by its creation of a lighting district prior to the enactment of the supplement to N.J.S.A. 40A:4-45.2, nor does the retroactive application of that legislation contravene the Fourteenth Amendment to the United States Constitution. Thus, the statute is a valid exercise of the Legislature's control over the financial affairs of a political subdivision which it has created.
*222 The Borough had undoubtedly anticipated using the creation of the lighting district as a "legal maneuver" to free up the funds previously included in its budget for lighting purposes. Although the enactment of the supplement to N.J.S.A. 40A:4-45.2 thwarted that plan, we cannot conclude that this will result in "manifest injustice" to the Borough as it argues. Its reliance upon Gibbons v. Gibbons, 86 N.J. 515 (1981), is misplaced. The legal maneuver by the Borough was simply a method of circumventing the CAP limitation in N.J.S.A. 40A:4-45.2. It was not an exception or exemption provided in that law upon which the Borough relied.
The vested rights argument, as well as the Borough's estoppel argument, clearly ignore the legislative plan. By its language the statute applied to the Borough's 1982 budget. Although its 1981 budget contained a lesser sum for street lighting purposes (we were told at oral argument that the $11,000 included in the 1981 budget was for traffic lights and the sign for the Borough name), the Director could not have refused to certify the 1981 budget because of that reduction or exclusion since it was not "the last full budget year throughout which the service or function so transferred was funded from appropriations in the municipal budget." [Emphasis supplied.] That year was 1980.
Furthermore, the legislation was adopted on March 9, 1981, seven days before the Borough introduced its municipal budget for the 1981 fiscal year on March 16, 1981 and substantially before the Borough adopted its 1982 budget.[4] Thus, the Borough had ample opportunity to seek the approval of its voters to exceed the spending limitation imposed upon it by the local government CAP law pursuant to N.J.S.A. 40A:4-45.3(i) and *223 40A:4-45.3 a prior to adoption of the 1982 budget, the budget affected by the application of the supplement to N.J.S.A. 40A:4-45.2.
While the Local Finance Board expressed sympathy and understanding of the Borough's plight, it felt obliged, on advice of its counsel, to apply the law as the Legislature had enacted it. Similarly, this court must apply the law as the Legislature intended it. Any plea of "manifest injustice" must be directed to the Legislature. Clark v. Degnan, 83 N.J. at 400.
The decision of the Director of the Division of Local Government Services, upheld by the Local Finance Board, is affirmed.
NOTES
[1] The budget prepared by the commissioners for 1981 was defeated at the election. Since the statute makes no procedural provision in the event of such a defeat, the commissioners used as a statutory guideline N.J.S.A. 40A:14-78.5 b dealing with budgets of fire districts. Following this procedure the borough adopted a resolution on April 13, 1981 certifying the lighting district budget as $60,000 for the year 1981.
[2] In addition to creating such a special purpose district, or local public utility, or local public authority, some municipalities sold municipal assets to the district utility authority and then excepted the "money derived from the sale of (such) municipal assets" from the previous year's final appropriation under N.J.S.A. 40A:4-45.3 h, thereby enjoying a double "CAP" bonus as a result of the revenues derived from the sale of municipal assets plus "freeing up" moneys in the budget which were previously expended for such services.
[3] Although the Legislature has explicitly provided for a number of specific exceptions from the spending limitation imposed by the local government CAP law, nowhere is the creation of a lighting district classified as an "exemption." The only exception that could be involved in the creation of a local public utility, authority or special purpose district would be the sum derived from the sale of municipal assets transferred to such utility, authority or district. N.J.S.A. 40A:4-45.3 h. As noted, the creation of the lighting district here did not involve the transfer of any municipal assets.
[4] Although the Borough apparently claims that it was unaware of the enactment of the statute on March 9, 1981, it nevertheless availed itself of another amendment made to the local government CAP law on March 3, 1981, L. 1981, c. 56, by excluding certain costs from the Borough's budget CAP for its 1981 budget, N.J.S.A. 40A:4-45.3 m, including street lighting in the amount of $4,800.