958 A.2d 465 (2008)
403 N.J. Super. 345
The CITY OF OCEAN CITY, a municipal corporation of the State of New Jersey, Plaintiff-Respondent,
v.
Joseph SOMERVILLE, Peter Guinosso, Dennis Myers, John Bryson, Frederick Hoffman, individually and collectively as the Committee of the Petitioners, Defendants-Appellants.
No. A-1982-06T1
Superior Court of New Jersey, Appellate Division.
Argued Telephonically August 18, 2008.
Decided October 10, 2008.
*467 Frank L. Corrado argued the cause for appellants (Barry, Corrado, Grassi & Gibson, attorneys; Mr. Corrado, Wildwood, on the brief).
Gerald J. Corcoran, Linwood, PA, argued the cause for respondent (Montgomery, McCracken, Walker & Rhoads, attorneys; Georgette Fries, Cherry Hill, on the brief).
Before Judges STERN, A.A. RODRÍGUEZ and PARRILLO.
The opinion of the court was delivered by
*468 PARRILLO, J.A.D.
The issue, one of first impression, is whether an ordinance that imposes a "cost of living" cap on budgeted municipal expenditures in a Faulkner Act community may be adopted by the "initiative" process. In an unpublished opinion decided in this matter on September 13, 2007, we previously answered the question in the negative. Relying in part on Cuprowski v. Jersey City, 101 N.J.Super. 15, 23, 242 A.2d 873 (Law Div.), aff'd o.b., 103 N.J.Super. 217, 247 A.2d 28 (App.Div.), certif. denied, 53 N.J. 80, 248 A.2d 433 (1968), which held that only legislative ordinances are subject to referendum, we concluded that an ordinance dictating limits on municipal expendituresbudget, debt and salariesis administrative in nature and thus exempt from the initiative process. Thereafter, the Supreme Court rejected the judicially-created legislative/administrative dichotomy, in favor of the plain meaning of the statute mandating that "any ordinance" is subject to referendum unless there is an applicable statutory exception. In re Ordinance 04-75, 192 N.J. 446, 467, 931 A.2d 595 (2007). Consequently, on appellants' petition for certification to review our judgment in this case, the Court summarily remanded this matter for reconsideration in light of its ruling in In re Ordinance 04-75. See Ocean City v. Somerville, 195 N.J. 516, 950 A.2d 904 (2008). On remand, we adhere to our prior conclusion, but for different reasons.
Some background is in order. Ocean City is organized under the Optional Municipal Charter Law, N.J.S.A. 40:69A-1 to -210, commonly called the Faulkner Act, in a "mayor-council" form of government. The council exercises the legislative power, and it does so by ordinance. N.J.S.A. 40:69A-36. Moreover, its citizens have the right to propose and vote on municipal ordinances through the initiative process, N.J.S.A. 40:69A-184, and also have the power to approve or reject municipal ordinances passed by the council, after which a referendum petition has been filed. N.J.S.A. 40:69A-185. Apropos of the latter, ordinances must be held in abeyance until twenty days following their adoption, with the sole exception of the "local budget ordinance," N.J.S.A. 40:69A-181(b), -185, because municipal budgets, whether adopted by resolution or ordinance, N.J.S.A. 40A:4-4; N.J.S.A. 40:69A-36(m), take effect immediately. N.J.S.A. 40A:4-10 ("Upon adoption, the budget shall constitute an appropriation for the purposes stated therein. . . .").
As noted, voters in a Faulkner Act municipality have the right of initiative to "propose any ordinance" and then "adopt or reject the same at the polls." N.J.S.A. 40:69A-184. If the council rejects an initiative ordinance, the municipality must schedule an election on it, unless it is withdrawn. N.J.S.A. 40:69A-191. Furthermore, N.J.S.A. 40:69A-184 "does not limit the power of initiative to only those areas of municipal concern which have never been the subject of favorable council action." Smith v. Twp. of Livingston, 106 N.J.Super. 444, 450, 256 A.2d 85 (Ch.Div.), aff'd o.b., 54 N.J. 525, 257 A.2d 698 (1969). Instead, it lets voters seek "to amend a long-standing ordinance" when "there is either a change in the circumstances or in the will of the people." Ibid.
Voters also have the right of referendum to seek the repeal of any ordinance that must be held in abeyance for twenty days after adoption. N.J.S.A. 40:69A-181(b), -185. If the council fails to repeal the ordinance as requested, the ordinance is then "suspended from taking effect" until the referendum election. N.J.S.A. 40:69A-185, -191.
The "salutary purposes" of both initiative and referendum include "arousing *469 public interest" and "placing in the hands of the voters . . . direct means of controlling proposed or already enacted municipal legislation and also of accomplishing the enactment of legislation which has neither been proposed nor adopted." Maese v. Snowden, 148 N.J.Super. 7, 11, 371 A.2d 802 (App.Div.1977) (citing N.J.S.A. 40:69A-184, -185). Two statutes ensure that the voters have that right both before and after the council adopts an ordinance on any particular subject. See Great Atl. & Pac. Tea Co. v. Borough of Point Pleasant, 137 N.J. 136, 146-47, 644 A.2d 598 (1994) (initiative and referendum under N.J.S.A. 40:69A-184 and -185 are similar because "[b]oth forms of action result in action that is binding on the governing body"); Twp. of Sparta v. Spillane, 125 N.J.Super. 519, 523, 525, 312 A.2d 154 (App.Div.1973) ("The initiative and referendum processes authorized by the act comprise two useful instruments of plebiscite power;" "essentially the same considerations which bar application of the initiative process to zoning ordinance amendments apply in the case of the referendum"), certif. denied, 64 N.J. 493, 317 A.2d 706 (1974).
Appellants are five residents of plaintiff City of Ocean City, collectively comprising the "Committee of Petitioners" (Committee). On February 3, 2006, the Committee presented to the Ocean City clerk an initiative petition requesting adoption of a so-called taxpayer protection ordinance (TPO) that essentially would limit increases in municipal expendituresbudget, debt and salariesto increases in the cost of living, unless otherwise approved by a majority of Ocean City voters in a referendum. Specifically, the initiative stated:
We, the undersigned registered voters of the City of Ocean City, pursuant to N.J.S.A. 40:69A-184 to 40:69A-196 want to adopt the TAXPAYER PROTECTION ORDINANCE. Municipal budgets, salary ordinances, and contracts would be restricted to the Social Security Cost of Living Adjustment (COLA) increases of the prior calendar year. It also limits the creation of new debt not to exceed total debt as of December 31, 2005, nor shall the benefits of employment be augmented. Any increase above the Social Security COLA or debt limit must be placed on a ballot and approved at the [polls] by a majority of the voters.
The TPO, attached to the initiative, sets 2005 as its "base year," and correlates budget and salary increases to increases in the "index," defined as "increases in the annual Social Security Cost of Living Adjustment."
With respect to the municipal budget, the TPO provides:
No municipal budget shall result in a percentage increase in appropriations in excess of the prior year's budget appropriations that exceeds the rate of inflation, as measured by the index for the prior calendar year, unless a majority of the voters in the city has approved a public question authorizing the increase.
As concerns municipal debt, the TPO states:
The mayor and council shall not, in any manner, create in any fiscal year a debt or debts, liability or liabilities of Ocean City, which together with any previous debts or liabilities, shall exceed at any time the city's total outstanding debt as of December 31st of the base year, unless a public question authorizing the debt or liability has been approved by a majority of the voters in the city.
And finally, regarding salary increases, the TPO recites:
The mayor and council shall not adopt any salary ordinance, or approve or authorize the execution of any collective *470 negotiations labor contract, which includes a percentage increase in salary in any year that exceeds the rate of inflation, as measured by the index for the prior calendar year, nor shall the benefits of employment be augmented, unless a majority of the voters in the city has approved a public question authorizing the salary increase and/or benefits.
In sum, appellants' proposed ordinance would limit the percentage increase in the budget and in municipal salaries[1] to an "index" rate, meaning the Social Security cost of living adjustment "or any successor index." It would also prevent the "benefits of employment" from being "augmented," and cap municipal debt. It would not, however, prevent the voters from approving a public question on such increases, or prevent increases in salaries or benefits that are compelled by statute, an "administrative agency of competent jurisdiction," or court order.
The city clerk, as required by N.J.S.A. 40:69A-187, reviewed the submitted petitions and determined they satisfied the statutory requirements for form and content and that they contained the required number of signatures. N.J.S.A. 40:69A-184, -186. Upon certification by the municipal clerk, N.J.S.A. 40:69A-187, the initiative petition would ordinarily have been referred to the City Council, which would then be required to either adopt the ordinance requested by the initiative petition or submit it to a voter referendum. N.J.S.A. 40:69A-190, -191.
However, that did not occur here because the City, asserting that the proposed TPO was not the proper subject of the initiative process and therefore ultra vires, filed a declaratory judgment action in the Law Division, seeking a determination that the TPO is invalid and should not be placed on the ballot. The Committee counterclaimed, seeking an opposite declaration that the TPO was valid. The matter proceeded to summary disposition on undisputed facts, R. 4:6-7, and after argument, the judge held that the TPO was invalid, reasoning under Cuprowski that a municipal budget is an administrative action not subject to the initiative process. We affirmed, in part for the reasons stated by the Law Division and in part because, in our view, fiscal and budgetary matters are dedicated exclusively by statute to the municipality's governing body, N.J.S.A. 40:48-1. As noted, the Supreme Court remanded the matter for reconsideration in light of In re Ordinance 04-75.
That case instructs that when determining whether an ordinance is subject to a recall challenge, a court's duty is to apply the referendum statute, N.J.S.A. 40:69A-184, as enacted, which mandates that "any ordinance," regardless of how categorized, is subject to referendum unless, of course, a statutory exception applies. In re Ordinance 04-75, supra, 192 N.J. at 461-62, 931 A.2d 595. There, the ordinance being challenged by referendum established a new organization table for the Trenton police department and set a salary range for the chief of administrative services. Id. at 451-52, 931 A.2d 595. The Law Division determined the portion of the ordinance restructuring the police department was administrative in nature and thus not subject to referendum. Id. at 451, 931 A.2d 595. We reversed, finding it to be legislative in character and subject to voter approval in a referendum. Ibid. The Supreme Court, rejecting the distinction altogether, relying on the plain *471 meaning of the referendum statute, and finding no applicable statutory exception, held that Ordinance 04-75 is subject to the referendum process and must be placed on the ballot for voter review. Ibid.
What is particularly instructive for present purposes is the Court's discussion of municipal budgets, which it found enjoyed "a partial, if not total, exception to the referendum rule." Id. at 465, 931 A.2d 595. The Court found this exception to be carved out of the very language of the referendum statute itself, which provides that no ordinance shall take effect before twenty days of the time of its final approval, "except when otherwise required by general law or permitted by the provisions of [N.J.S.A. 40:69A-181.]" N.J.S.A. 40:69A-185. The Legislature, however, exempted local budget ordinances from this twenty-day waiting period, N.J.S.A. 40:69A-181(b), signifying that, unlike other ordinances, a budget ordinance cannot be suspended during the twenty-day grace period otherwise allowed to protesting citizens to file the requisite number of signatures necessary to delay implementation of the ordinance until a referendum vote. Id. at 465, 931 A.2d 595. It was reasonable therefore to assume, as did the Law Division in Cuprowski, that the "Legislature excluded the budget from recall because it becomes effective immediately upon adoption." Id. at 465-66, 931 A.2d 595 (quoting Cuprowski, supra, 101 N.J.Super. at 21, 242 A.2d 873).
Apart from the provision's specific text, the Court also recognized a number of other exceptions to N.J.S.A. 40:69A-185 in a multitude of statutes addressing municipal matters that should not be called before the voters in a referendum. Id. at 466-67, 931 A.2d 595. Illustrative is the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -129, which provides that "[n]o zoning ordinance and no amendment or revision to any zoning ordinance shall be submitted to or adopted by initiative or referendum." N.J.S.A. 40:55D-62(b); see also Tumpson v. Farina, 240 N.J.Super. 346, 351, 573 A.2d 472 (App.Div.) (recognizing N.J.S.A. 40:55D-62 as statutory exception to referendum statute), aff'd, 120 N.J. 55, 575 A.2d 1368 (1990). Citing several other examples, the Court reasoned "that the Legislature knew precisely how to exclude particular ordinances from the purview of the referendum statute when it wished to do so." In re Ordinance 04-75, supra, 192 N.J. at 466, 931 A.2d 595.
Even where the Legislature has not been as explicit as the MLUL in its exemption of a municipal matter from N.J.S.A. 40:69A-185, a State mandate embodied in a legislative enactment "that does not allow for the exercise of municipal discretion cannot be overridden by a referendum." Id. at 469, 931 A.2d 595. So, for instance, "when a state statute has preempted a field by supplying a complete system of law on a subject, an ordinance dealing with the same subject is void." Brunetti v. New Milford, 68 N.J. 576, 601, 350 A.2d 19 (1975) (citations omitted); see also Summer v. Teaneck, 53 N.J. 548, 554, 251 A.2d 761 (1969). Stated somewhat differently, municipalities may not enact ordinances on a matter that the State has reserved to its exclusive jurisdiction, regardless of whether the matter "`exhausts the field or touches only part of it.'" State v. Crawley, 90 N.J. 241, 250, 447 A.2d 565 (1982) (quoting State v. Ulesky, 54 N.J. 26, 29, 252 A.2d 720 (1969)). The Legislature must have intended such preemption, Mack Paramus Co. v. Mayor of Paramus, 103 N.J. 564, 573, 511 A.2d 1179 (1986), and there is a five-part test for the existence of an intent to preempt. Overlook Terrace Mgmt. Corp. v. Rent Control *472 Bd. of W. N.Y., 71 N.J. 451, 461-62, 366 A.2d 321 (1976). The factors are:
1. Does the ordinance conflict with state law, either because of conflicting policies or operational effect (that is, does the ordinance forbid what the Legislature has permitted or does the ordinance permit what the Legislature has forbidden)?
2. Was the state law intended, expressly or impliedly, to be exclusive in the field?
3. Does the subject matter reflect a need for uniformity?....
4. Is the state scheme so pervasive or comprehensive that it precludes coexistence of municipal regulation?
5. Does the ordinance stand "as an obstacle to the accomplishment and execution of the full purposes and objectives" of the Legislature?
[Ibid. (citations omitted).]
The point of this discussion is that, while "[i]t is the function of the Legislature, not the courts, to determine how much direct democracy through [initiative and] referendum should be conferred on the voters of a municipality[,]" In re Ordinance 04-75, supra, 192 N.J. at 467, 931 A.2d 595, the Legislature on multiple occasions has chosen to delineate these borders outside the confines of the Initiative and Referendum Law itself, N.J.S.A. 40:69A-184 to -209. In fact, N.J.S.A. 40:69A-184, which grants to Faulkner Act communities the power of initiativenamely the power to create legislationby its very terms admits of no qualification. Thus, the provision states that "voters of any [Faulkner Act] municipality may propose any ordinance and may adopt or reject the same at the polls, such power being known as the initiative." N.J.S.A. 40:69A-184 (emphasis added).[2]
However, while "any ordinance" means "all ordinances," In re Ordinance 04-75, supra, 192 N.J. at 454, 460-61, 931 A.2d 595, no one disputes that the power of initiative is not without limitation. After all, the right to local initiative is granted by statute and is therefore subject to statutory and constitutional limitations. Millennium Towers Urban Renewal L.L.C. v. Mun. Council of Jersey City, 343 N.J.Super. 367, 376, 778 A.2d 598 (Law Div.2001); Atlantic City Hous. Action Coal. v. Deane, 181 N.J.Super. 412, 418, 437 A.2d 918 (Law Div.1981). In fact, ordinances passed by initiative are subject to amendment or repeal in the same manner that ordinances passed by the governing body of a municipality are. N.J.S.A. 40:48-1 ("The governing body of every municipality may make, amend, repeal and enforce ordinances to ... [m]anage, regulate and control the finances and property ... of the municipality."); see also Maese v. Snowden, supra, 148 N.J.Super. at 12, 371 A.2d 802.
Moreover, the fact that the initiative provision itself contains no limitations is hardly dispositive. The Legislature may indicate the intent behind a particular statute not only by its language, but also by its place in the overall "statutory scheme" and by the scheme's legislative history. In re Ordinance 04-75, supra, 192 N.J. at 451, 458, 467, 931 A.2d 595. Accordingly, we construe statutes having "`the same purpose or object'" in pari materia, Richard's Auto City, Inc. v. Dir., Div. of Taxation, 140 N.J. 523, 540, 659 A.2d 1360 (1995) (quoting 2B Norman J. Singer, Sutherland Statutory Construction *473 § 51.03 (5th ed.1992)), that is, in a way that serves the legislative purposes of both, and also "in a manner that avoids unreasonable results unintended by the Legislature." Am. Fire & Cas. Co. v. N.J. Div. of Taxation, 189 N.J. 65, 81, 912 A.2d 126 (2006). "[A] statute must be `construed as a whole with reference to the system of which it is a part.'" Green v. Auerbach Chevrolet Corp., 127 N.J. 591, 598, 606 A.2d 1093 (1992) (quoting Twp. of Millburn v. Block 1208, Lot 2, 189 N.J.Super. 523, 527, 461 A.2d 163 (Ch.Div.1983)). "`The literal sense of [statutory] terms is not to have ascendancy over the reason and spirit of the expression as a whole.'" Ibid. (quoting Giles v. Gassert, 23 N.J. 22, 34, 127 A.2d 161 (1956)).
While the right of initiative and referendum is to "be liberally construed.... to promote, where appropriate, its beneficial effects[,]" Retz v. Mayor & Council of Saddle Brook, 69 N.J. 563, 571, 355 A.2d 189 (1976), "it was not the [Legislature's] intent for such provisions to grant unlimited and unqualified rights to citizens to challenge the acts of local municipal governments." Millennium Towers Urban Renewal L.L.C., supra, 343 N.J.Super. at 373, 778 A.2d 598 (citation omitted). The Supreme Court has recognized the "judicial dilemma" inherent in such determinations:
In many situations it is difficult to determine how far the limitations [on initiative and referendum] should go. The courts must draw the line in these situations and in doing so must balance two intereststhe protection of city government from harassment as against the benefits of direct legislation by the people.
[Tumpson v. Farina, 120 N.J. 55, 59, 575 A.2d 1368 (1990) (internal citations omitted).]
Indeed, there are certain ordinances, regardless of their characterization as administrative or legislative, which are simply not subject to initiative and referendum because of the subject matter involved or because they are statutorily excluded from the initiative and referendum provisions. Millennium Towers Urban Renewal L.L.C., supra, 343 N.J.Super. at 376, 778 A.2d 598; see also Tumpson, supra, 120 N.J. at 57, 575 A.2d 1368; In re Certain Petitions for a Binding Referendum, 154 N.J.Super. 482, 485, 381 A.2d 1217 (App.Div. 1977).
One such limitation on the power of initiative stems from the settled principle that a governing body cannot, absent specific legislative permission, divest its successors of legislative power. Maese, supra, 148 N.J.Super. at 13, 371 A.2d 802 (quoting McCrink v. West Orange, 85 N.J.Super. 86, 91, 204 A.2d 10 (App.Div.1964)); see also 4 McQuillan on Municipal Corporations § 13.03(b) (3d rev. 1968). It stands to reason then that if a governing body cannot by ordinance presently adopted restrain the future exercise of municipal legislative power, neither may the citizenry through initiative or referendum create an ordinance divesting the municipal governing body of that power.
For instance, in Maese, supra, a citizens' committee filed an initiative petition with the municipal clerk, proposing an ordinance prohibiting "the governing body or officials of the township from committing or spending any public funds," incurring any indebtedness and from pledging or obligating public funds for the construction of the municipal complex on township land. 148 N.J.Super. at 10, 371 A.2d 802. The trial judge granted summary judgment to the township on the grounds that the initiative ordinance was invalid "as a restraint on all future actions, not only by *474 this governing body but by any other governing body." Id. at 11, 371 A.2d 802. We affirmed on appeal, concluding:
The invalidity of the proposed initiative ordinance ... springs from an attempt to shackle, if not to completely immobilize, the governing body in connection with construction on the municipally-owned tract. Since the governing body itself could not enact such an ordinance, it follows from what has been said that the voters were likewise without that authority.
[Id. at 13, 371 A.2d 802.]
In McCrink, supra, a citizens' committee in the Faulkner Act community of West Orange proposed by initiative petition a salary ordinance in 1964 providing that the maximum salary range for uniformed fire personnel should not be changed during the next two succeeding years, 1965 and 1966. 85 N.J.Super. at 88-89, 204 A.2d 10. Reasoning that the town's legislative power would be restrained for a period of almost three years, id. at 90, 204 A.2d 10, we found the proposed initiative ordinance defective on its face and not submittable to vote under the Faulkner Act, concluding "[i]t is fundamental that a governing body could not, by an ordinance adopted, place a restraint upon the future exercise of municipal legislative power." Id. at 91, 204 A.2d 10.
Other limitations on the initiative power may be found in legislative mandates, either express or implied. Tumpson, supra, 120 N.J. at 57, 575 A.2d 1368. As noted, in In re Ordinance 04-75, supra, Justice Albin, writing for a unanimous Court, enumerated a host of statutes wherein the Legislature explicitly exempted certain municipal matters from the initiative and referendum process. 192 N.J. at 466-67, 931 A.2d 595. But even where the legislative directive has not been as express or precise, limitations on initiative authority may be inferred or implied from comprehensive State supervision, regulation or occupation of the field.
For example, in Sloan v. Lettieri, 171 N.J.Super. 445, 409 A.2d 829 (Ch.Div. 1979), voters in the City of Bayonne introduced an ordinance under the initiative power contained in the Faulkner Act imposing term limits on elected municipal officials. Id. at 448, 409 A.2d 829. The Chancery Division held that the proposed ordinance was void on its face because the general provisions of the Faulkner Act provide a comprehensive scheme governing municipal elections and therefore evince a legislative intent to preempt the regulation of municipal elections, including the number of terms that a municipally-elected official is eligible to hold. Id. at 450-51, 409 A.2d 829. The court noted in this regard that "[t]he provisions of th[e] [Faulkner Act] dealing with elections are so comprehensive that they preclude the possibility of the coexistence of municipal regulations." Id. at 451, 409 A.2d 829. In fact, the proposed ordinance would actually conflict with the Faulkner Act, which does not limit the eligibility of a person to be a candidate because of his or her previous terms in office. Ibid.
Legislative intent to preclude use of the initiative power because of State oversight and involvement was also presumed in In re Certain Petitions for a Binding Referendum, 154 N.J.Super. 482, 486, 381 A.2d 1217 (App.Div.1977). There, an initiative petition sought, under the Walsh Act (commission form of government), N.J.S.A. 40:70-1 to 40:76-27, enactment of amendments to a comprehensive traffic ordinance of the Village of Ridgefield Park. Id. at 484-85, 381 A.2d 1217. In holding the initiative process not available for this purpose, we noted that the matter of traffic control and regulation is one of combined, collaborative and cooperative state and local *475 action having regional as well as local import, which needs to be comprehensive in its scheme and plan. Id. at 486-87, 381 A.2d 1217. We therefore concluded "it is not within reasonable contemplation that the Legislature would intend the possibility of fragmentization or disruption of such comprehensive traffic planning by isolated and uncoordinated actions of the local electorates via initiative or referendum." Id. at 487, 381 A.2d 1217.
Nor could the initiative process, as previously noted, be utilized in zoning matters, which are the subject of an exclusive grant of power by the State to the governing bodies of municipalities generally, under the former Zoning Act, N.J.S.A. 40:55-30 to -45, now N.J.S.A. 40:55D-62. Smith v. Livingston Tp., 106 N.J.Super. 444, 457, 256 A.2d 85 (Ch.Div.), aff'd o.b., 54 N.J. 525, 257 A.2d 698 (1969); see also Twp. of Sparta, supra, 125 N.J.Super. at 523, 312 A.2d 154 (holding same as to use of the referendum upon an adopted zoning amendment), certif. denied, 64 N.J. 493, 317 A.2d 706 (1974). In Smith, supra, the court noted that the Zoning Act is specific in detailing the manner in which zoning ordinances may be amended and the procedures to be followed by all governmental bodies, including municipal planning boards, in carrying out the zoning functions. 106 N.J.Super. at 451-52, 256 A.2d 85. "Such comprehensive and precise treatment demonstrates the special concern of the Legislature in this important area of municipal regulation." Sparta, supra, 125 N.J.Super. at 526, 312 A.2d 154. To apply the initiative procedure to zoning matters would therefore "disregard the valuable expertise of the planning board, and permit the electorate to defeat the beneficent purpose of the comprehensive zoning ordinance." Smith, supra, 106 N.J.Super. at 457, 256 A.2d 85.
The initiative procedure is also off-limits to the redevelopment process. Atlantic City Hous. Action Coal., supra, 181 N.J.Super. at 412, 437 A.2d 918 (decided under the Walsh Act). Similar to the Zoning Act, the repealed redevelopment statutes, N.J.S.A. 40:55C-1 to -82 (repealed 1992), set forth "very specific and detailed procedure[s] to be followed by the governing bodies of municipalities in executing" their urban redevelopment function, authorizing them "to establish housing authorities and urban redevelopment agencies to assist them" in this area. Atlantic City Hous. Action Coal., supra, 181 N.J.Super. at 421, 437 A.2d 918. Given such comprehensive and precise treatment, "it is not within reasonable contemplation that the Legislature would intend the possibility of fragmentization or disruption... by isolated and uncoordinated actions of the local electorate via the initiative process." Id. at 419, 437 A.2d 918.
A similar exception from the initiative and referendum process was granted the Long Term Tax Exemption Law, N.J.S.A. 40A:20-1 to -22, which was found to be an integral part of the Local Redevelopment and Housing Law, N.J.S.A. 40A:12A-1 to 49. Millennium Towers Urban Renewal L.L.C., supra, 343 N.J.Super. at 379, 778 A.2d 598. There, the court found that the Legislature intended the former law to work hand-in-hand with the latter "to form a comprehensive legislative scheme to encourage and support local economic initiatives targeted at economically depressed areas." Id. at 381, 778 A.2d 598. Such municipally-sponsored redevelopment plans, the court reasoned, were immune to initiative and referendum, which "would clearly frustrate the legislative intent so evident throughout both statutes." Ibid.
Perhaps state supervision of local affairs is no more fully developed than in the area of municipal finance, where the *476 Legislature has established a comprehensive system pertaining to municipal budgets, debt and salaries. Indeed, the Legislature has complete control over the financial affairs of a political subdivision which it has created. Pitman v. Skokowski, 193 N.J.Super. 215, 221, 473 A.2d 100 (App.Div.1984); see also Clark v. Degnan, 83 N.J. 393, 399-400, 416 A.2d 816 (1980); N.J. State Policemen's Benevolent Ass'n, Local 29 v. Irvington, 80 N.J. 271, 299, 403 A.2d 473 (1979). And, while the Legislature has dedicated fiscal and budgetary matters of a municipality exclusively to its governing body, N.J.S.A. 40:48-1, these functions are to be carried out only in the manner in which the Legislature establishes. Skokowski, supra, 193 N.J.Super. at 221, 473 A.2d 100 (citing Clark, supra, 83 N.J. at 399-400, 416 A.2d 816). Thus, the Local Budget Law, N.J.S.A. 40A:4-1 to -88, which applies to all municipalities, establishes specific procedures for preparing, introducing, adopting and implementing the municipal budget.

(A)
The governing body of a municipality may adopt the municipal budget after a public hearing, "by title without amendments," N.J.S.A. 40A:4-8(2), or it may approve the budget with amendments pursuant to N.J.S.A. 40A:4-9. Thereafter, the Division of Local Government Services Director (hereinafter "director") may require the municipality to amend the budget, N.J.S.A. 40A:4-9(a); otherwise, the municipality's governing body may amend the budget during or after a public hearing if it so chooses. In the event that the governing body of a municipality amends the budget, the amendments shall be read in full, and they shall be re-submitted to the director. N.J.S.A. 40A:4-9(a). The final adoption of the budget shall be by a "resolution[3] adopted by a majority of the full membership of the governing body," but "[n]o budget or amendment thereof shall be adopted unless the director shall have previously certified his approval thereof." N.J.S.A. 40A:4-10.
However, the Faulkner Act modifies this procedure in communities organized under the Act. N.J.S.A. 40:69A-45. Since Ocean City is organized under the Faulkner Act in a "mayor-council" form of government, the mayor bears the responsibility for preparing the municipal budget. N.J.S.A. 40:69A-45. The town's business administrator shall assist the mayor in preparing the budget, and the "[c]ouncil may reduce any item or items in the mayor's budget by a vote of a majority of the council, but an increase in any item or items therein shall become effective only upon an affirmative vote of two-thirds of the members of council." N.J.S.A. 40:69A-46.
As noted, the Legislature also controls restrictions that may be placed on municipal spending. Skokowski, supra, 193 N.J.Super. at 221, 473 A.2d 100. In the Budget Cap Law, N.J.S.A. 40A:4-45.1 to -45.47, the Legislature has limited the annual increase in municipal budgets. N.J.S.A. 40A:4-45.2. Succeeding sections demonstrate the specificity with which the Legislature crafted this law. See, e.g., N.J.S.A. 40A:4-45.3.
Under the Budget Cap Law, municipalities are "prohibited from increasing their final appropriations by more than 2.5% or the cost-of-living adjustment, whichever is less, over the previous year." N.J.S.A. 40A:4-45.2, -45.3. In enacting this constraint, *477 the Legislature reconciled dueling policy considerations, balancing, on the one hand, the need to limit the spiraling costs of local government with, on the other hand, the municipality's need to provide services to its constituents. N.J.S.A. 40A:4-45.1, L. 1976, c. 68, § 1. For instance, N.J.S.A. 40A:4-45.2(c), (e) allow municipalities to amend the computation of its final appropriation for the previous year to take into account "[a]mounts approved by referendum," and "[e]xpenditures for the assumption of any service or function of a local public utility, a local public authority, or a special purposes district," among other things. Moreover, the Legislature provided numerous exceptions to the statutory cap. N.J.S.A. 40A:4-45.3. For example, capital expenditures that meet the requirements of N.J.S.A. 40A:2-21 and 40A:2-22, are exempt from the limitation. N.J.S.A. 40A:4-45.3(b). Among other exceptions, the Legislature further exempted emergency temporary appropriations, N.J.S.A. 40A:4-45.3(c)(1); debt service payments, N.J.S.A. 40A:4-45.3(d);[4] and amounts reserved for uncollected taxes, N.J.S.A. 40A:4-45.3(f), from the limitation on budget increases set forth in the Budget Cap Law.
Other than allowing for exemptions, the Legislature also permits a municipality the option of exceeding the budget cap by 1% by enacting an ordinance that is "approved by a majority vote of the full membership of the governing body." N.J.S.A. 40A:4-45.14. Thereafter, a municipality may exceed the 3.5% spending cap only by way of referendum. N.J.S.A. 40A:4-45.3(i).
Most recently, the Legislature, in the Local Budget Law, imposed mandatory caps on a municipality's ability to raise taxes. N.J.S.A. 40A:4-45.45. Specifically, that provision states that, "[i]n preparation of its budget the amount to be raised by taxation by a local unit shall not exceed the sum of new ratables, the adjusted tax levy, and the total of waivers approved pursuant to [N.J.S.A. 40A:4-45.46]." A waiver can be obtained if approved by the Local Finance Board in the Department of Community Affairs. N.J.S.A. 40A:4-45.46. As with caps on municipal spending, the Legislature also permits a municipality to increase taxes beyond the cap and beyond those amounts approved by waiver, but only by way of a referendum that is approved by "60 percent or more of the people." N.J.S.A. 40A:4-45.46(b).
Historically, when first enacted in 1976, the Legislature recommended that the cap "be instituted on an experimental basis with a review ... to adjust the program based upon experience." N.J.S.A. 40A:4-45.1; L. 1976, c. 68, § 1. Seven years later, it declared that the program had been successful, but that the initial "uniform fixed percentage limitation on increases in expenditures" had failed to reflect "either national economic trends or the differing needs of the various local governments." N.J.S.A. 40A:4-45.12; L. 1983, c. 49, § 1. For that reason it created "an annually variable percentage limitation" as an alternative that "local officials and taxpayers" could choose in light of "the particular needs of their community." Ibid. It also modified "several features of the law which [had] proven to be arbitrary or to result in unintended effects on the structure of local government." Ibid. The legislative history notes for the cap, now set forth in N.J.S.A. 40A:4-45.1 to -45.47, show the repeated *478 modifications by which the cap became today's comprehensively detailed scheme.
It is evident from both the legislative scheme and history that a municipality's budgetary powers under both the Local Budget Law and the Budget Cap Law "are, like the budgetary process exercised by a county, clearly subject to the dominion of the Legislature." Skokowski, supra, 193 N.J.Super. at 221, 473 A.2d 100 (citing Clark v. Degnan, supra, 83 N.J. at 399-400, 416 A.2d 816). Indeed, as already noted, the Court has recognized that municipal budgets are statutorily immune from the referendum process. In re Ordinance 04-75, supra, 192 N.J. at 451, 462, 931 A.2d 595.
We perceive no reason for any different result in the initiative context even though an initiative if adopted would not delay implementation of a budget approved thereunder. To be sure, the initiative provision (N.J.S.A. 40:69A-184) lacks the referendum provision's (N.J.S.A. 40:69A-185) statutorily mandated twenty-day abeyance period, deemed significant in insulating municipal budgets, which take effect immediately, from the referendum process. But this distinction simply reflects the unique design and mechanics of the referendum procedure and does not evince a legislative intent to treat initiative and referendum differently on the substantive issue of direct voter participation in the budgetary process. Initiatives, after all, are pursued when there is no existing ordinance to be challenged and therefore held in abeyance, and the initiative ordinance itself has no effect until the voters approve it at an election. In any event, the significant legislative purpose remains the sameto allow the governing body to adopt a budget in a manner that insulates it from direct voter review. This purpose would be defeated, no doubt, by construing section 184 to allow repeated initiatives on the identical budgetary matters for which referenda are foreclosed under section 185.

(B)
Likewise, the Legislature dealt comprehensively with municipal debt in the Local Bond Law, N.J.S.A. 40A:2-1 to -64, which provides guidelines under which municipalities may borrow money. According to N.J.S.A. 40A:2-3,
[a]ny local unit, by bond ordinance, may incur indebtedness, borrow money, authorize and issue negotiable obligations for financing:
a. any capital improvement or property which it may lawfully make or acquire; [or]
b. any purpose for which it is authorized or required by law to make an appropriation, except current expenses... and payment of obligations (other than those for temporary financing).
The term "`bond ordinance' means an ordinance adopted ... by the governing body of a local unit authorizing obligations," and the term "obligations" is defined as "bonds or notes of a local unit." N.J.S.A. 40A:2-2.
Similar to the Local Budget Law, the Local Bond Law grants the power to approve and adopt bond ordinances, authorizing indebtedness and appropriating funds for capital projects, exclusively to the municipality's governing body. While the governing body of the municipality must hold a public hearing on the proposed bond ordinance, N.J.S.A. 40A:2-17(b), the Legislature specifically provided in N.J.S.A. 40:49-27 the exclusive means by which voters may challenge the bond ordinance once adopted. Thus, N.J.S.A. 40:49-27 provides in pertinent part:
Any ordinance authorizing the incurring of any indebtedness, except for current *479 expenses, shall become operative 20 days after the publication thereof, after its final passage, unless within those 20 days a protest against the incurring such indebtedness shall be filed in the office of the municipal clerk by petition signed by registered voters of [the] municipality....
In other words, if the bond ordinance is challenged and defeated at the polls, there is no appropriation for the capital project proposed. If, on the other hand, there is no challenge by way of referendum, the bond ordinance becomes effective twenty days after publication, at which time the monies are appropriated and the capital project undertaken.
N.J.S.A. 40:49-27 therefore only grants the voters the right of referendum. If the Legislature desired to vest them as well with the power to initiate municipal legislation governing the sale of bonds, it is reasonable to assume the initiative option would have been included in N.J.S.A. 40:49-27. Instead, the Legislature has expressly chosen the referendum process as the means to challenge bond ordinances adopted by the municipality's governing body as opposed to a voter initiative imposing a blanket prohibition, prospectively, on incurring debt above a certain predetermined level.

(C)
Similarly, the Legislature vested the governing body of a municipality with the exclusive authority, in the first instance, to set the salaries of municipal officers and employees. N.J.S.A. 40:69A-29(a) confers the power upon Faulkner Act municipal governments to "[o]rganize and regulate its internal affairs, and to establish, alter, and abolish offices, positions and employments and to define the functions, powers and duties thereof and fix their terms, tenure and compensation." Ibid. (emphasis added); see Myers v. Worrick, 182 N.J.Super. 117, 122, 440 A.2d 72 (Law Div.1981). In addition, N.J.S.A. 40A:9-165, which applies to all municipalities and not just those governed by the Faulkner Act, empowers the municipality's governing body to fix salaries, and states, "[t]he governing body of a municipality, by ordinance, unless otherwise provided by law, shall fix and determine the salaries, wages or compensation to be paid to the officers and employees of the municipality." N.J.S.A. 40A:9-165. Salaries, wages and compensation must be "fixed" by ordinance, N.J.S.A. 40:48-1(5); N.J.S.A. 40:69A-43(a); Cooper v. Mayor of Haddon Heights, 299 N.J.Super. 174, 179, 690 A.2d 1036 (App.Div.1997). Increases, decreases, or alterations must also be enacted by ordinance. N.J.S.A. 40A:9-165. "Fixing" a salary means "determining a salary range for a position within which compensation or wages can be more specifically set by resolution." Shalita v. Twp. of Washington, 270 N.J.Super. 84, 89, 636 A.2d 568 (App.Div.1994). Accord McKann v. Irvington, 133 N.J.L. 575, 576, 45 A.2d 494 (E. & A.1946).[5]
Interestingly enough, for present purposes, section 165 contains its own referendum provision, providing for voter review of ordinances that increase the salaries, wages or compensation of elective municipal officials or any managerial or confidential employee, as distinguished from ordinary employees. N.J.S.A. 40A:9-165. This provision, providing a *480 specific referendum procedure,[6] has been held to be the exclusive vehicle for testing ordinances increasing the salaries of elected officials and high level executive officers of a municipality, and thus preempts the Faulkner Act's general referendum provision of N.J.S.A. 40:69A-185. Lawrence v. Butcher, 130 N.J.Super. 209, 212, 326 A.2d 71 (App.Div.1974); Myers, supra, 182 N.J.Super. at 121, 440 A.2d 72; Lettieri v. Governing Body of Bayonne, 168 N.J.Super. 423, 426-28, 403 A.2d 64 (Law Div.1979). It is clear from the general applicability of section 165 that "`the Legislature intended to deal with the subject matter of the enactment of salary ordinances in a uniform way in all municipalities.'" Stop the Pay Hikes Comm. v. Town Council of Irvington, 166 N.J.Super. 197, 204, 399 A.2d 336 (Law Div.) (quoting Lawrence v. Butcher, supra, 130 N.J.Super. at 213, 326 A.2d 71) (holding that a referendum on "managerial salaries" is governed by the 5% signature requirement of N.J.S.A. 40:69A-165 rather than the more stringent 15% requirement of N.J.S.A. 40:69A-185), aff'd o.b., 170 N.J.Super. 393, 406 A.2d 725 (App.Div. 1979). Thus, while the Legislature has provided for voter review of salaries, section 165 is explicit in limiting a referendum only on any wage increase, and then only to elective officials or any managerial or confidential employee. Significantly, section 165 contains no statutory authority for voters to initiate, in the first instance, legislation fixing the salaries of municipal officials or employees.[7]

(D)
Viewed against this jurisprudence, we are satisfied that the TPO initiative proposed in this instance, imposing, among other things, a prospective "cost of living" cap on municipal budget expenditures in Faulkner Act communities unless otherwise approved by voters in a referendum, is invalid on its face. In the first place, the TPO fails if only because of its "referendum" feature, from which municipal budgets are clearly exempt. See In re Ordinance 04-75, supra, 192 N.J. at 465-66, 931 A.2d 595.[8]
But there are far more substantial reasons that compel our rejection of the TPO. By capping budgeted municipal spending prospectively, the TPO unlawfully operates as a restraint on all future action, not only of the present governing body, but any other governing body that follows. If, as a *481 matter of settled legal principle, a governing body itself may not, without specific permission of the Legislature, divest its successors of municipal legislative power, Maese, supra, 148 N.J.Super. at 12, 371 A.2d 802; McCrink, supra, 85 N.J.Super. at 91, 204 A.2d 10; 4 McQuillan on Municipal Corporations, supra, § 13.03(b), then certainly the voters, whose legislative authority to enact fiscal or budgetary ordinances is more restricted than that vested in municipal governing bodies,[9] are even more powerless to do so.
The TPO also runs afoul of State authority, which has vested the governing bodies of municipalities with the ultimate power in fiscal and budgetary matters, and which has laid out comprehensive and detailed procedures by which municipal government is to carry out the functions of budgeting, incurring debt and fixing salaries. Clearly the legislative schematic and history in setting a statutory cap, enumerating numerous exceptions thereto, and granting limited voter review, evince a strong concern over avoiding further restrictions on a municipality's ability to budget for its needs and obligations. In contravention thereof, the budget, salary and debt features of the proposed TPO seriously inhibit the degree of flexibility the Legislature has quite deliberately afforded a municipality's governing body, and municipal authority is limited to that authorized by the Legislature.
In other words, the Legislature's comprehensive regulation of the field of municipal spending leaves no room for an inference that it has ceded any more authority to a municipality's governing body or its voters than its enactments expressly or necessarily provide. For the most part, the Legislature has allocated authority to initiate legislation in the areas of municipal budget, debt and salary to the municipality's governing body, while allowing only limited voter review by referendum or initiative. As noted, the Legislature has made limited provision for voter review of adopted bond ordinances and ordinances increasing the salaries of elected municipal officials and high level executive officers. Outside of such statutory exceptions, however, it has left no room for voter-initiated measures to restrict municipal spending. Of course, the voters' ultimate recourse is their vote in regularly held municipal elections. Accordingly, we hold that the TPO in this case, proposed by initiative petition, and which caps municipal budget, debt, and salary of municipal employees, would be invalid.
Affirmed.
NOTES
[1] Appellants concede that the proposed ordinance cannot apply to existing collective bargaining agreements. Instead, it would limit the increases to which the municipality could agree in future contracts.
[2] N.J.S.A. 40:74-9, the initiative statute that governs Walsh Act municipalities, similarly refers to the right of the people to present "any ordinance," but expressly excepts a proposed ordinance fixing the salaries, wages or compensation of municipal employees.
[3] As noted, a municipality may "pass its budget by either ordinance or resolution." Cuprowski, supra, 101 N.J.Super. at 21, 242 A.2d 873 (citing Fox v. Clark, 72 N.J.L. 100, 59 A. 224 (Sup.Ct.1904)).
[4] The Legislature excluded debt service from the caps already placed on municipal spending presumably in recognition of the fact that that municipality is required to make certain appropriations to debt service as a result of covenants in previously adopted bond ordinances. See also N.J.S.A. 40A:4-57.
[5] In a mayor-council form of government, the mayor is to "fix the amount of salary, wages or other compensation to be paid to employees of the administrative departments," while the council fixes those amounts for "the director of each department." N.J.S.A. 40:69A-43a.
[6] If an ordinance includes "increases in salaries, wages or compensation" for any elected officials or high-level employees, that portion of the ordinance is held in abeyance for twenty days, during which the voters may seek a referendum on it. N.J.S.A. 40A:9-165.
[7] In addition to challenging enacted salary ordinances for elected officials and high-level employees, the voters may petition for a public question on fixing their salaries, wages, or compensation "in the amounts stated in the petition." N.J.S.A. 40A:9-168. It is then the burden of the governing body to draft and adopt an ordinance "definitely" incorporating the amounts that the petition indicated. N.J.S.A. 40A:9-167. See Lettieri v. Governing Body of Bayonne, supra, 168 N.J.Super. at 427-28, 403 A.2d 64 (N.J.S.A. 40A:9-167 and -168 establish one complete petition process, independent of the one in N.J.S.A. 40A:9-165). Accord Donato v. Gibson, 178 N.J.Super. 163, 168, 428 A.2d 536 (App.Div. 1981).

However, for ordinary employees, the portion of an ordinance increasing their salaries, wages, or compensation "shall take effect as provided therein." N.J.S.A. 40A:9-165. There is no mandatory abeyance period for that portion of the ordinance, N.J.S.A. 40A:9-165, the voters may not seek a referendum on it, and the governing body may not voluntary provide for one. N.J.S.A. 40A:9-167.
[8] We also note, in this regard, without deciding, plaintiff's argument that since local budgets shall be approved and adopted by resolution, N.J.S.A. 40A:4-4, such a resolution falls outside the ambit of section 185's referendum provision, which only pertains to ordinances.
[9] For instance, initiative ordinances are subject to amendment or repeal by the governing body to the same extent as other ordinances in the absence of a statutory declaration to the contrary. Maese, supra, 148 N.J.Super. at 12, 371 A.2d 802. Thus, theoretically the municipality's governing body could enact an ordinance identical to one which the voters had only recently rejected in a public referendum. See, e.g., Cornell v. Watchung, 49 N.J. 235, 238, 229 A.2d 630 (1967).